ROSA CANNADY, EMPLOYEE v. GOLD KIST, EMPLOYER, AETNA LIFE AND CASUALTY INSURANCE COMPANY, CARRIER

No. 7910IC148

(Filed 6 November 1979)

**Master and Servant § 68— occupational disease—insufficient findings**

Findings by the Industrial Commission were insufficient to support a determination as to whether the calcification of tendons and ligaments in plaintiff's shoulders, resulting in a 10 percent permanent partial disability to both arms, was caused by the performance of her duties as a "draw hand" in a chicken processing plant and was thus an occupational disease within the meaning of G.S. 97-53(13), and the cause is remanded for definitive findings and conclusions based on the evidence in the present record.

APPEAL by defendants from the Industrial Commission. Opinion and Award filed 30 October 1978. Heard in the Court of Appeals on 17 October 1979.

This is a Workmen's Compensation action in which plaintiff claims that the conditions of her employment as a "draw hand" for the defendant Gold Kist caused permanent partial disability in both her arms. In response to her claim for benefits, a hearing in the matter was held on 17 March 1977, at which the following evidence was offered by plaintiff:

In August 1976, when plaintiff's right arm started "bothering" her, she had been regularly employed at Gold Kist for little more than a year, although she had worked for them prior to this particular period of employment. Her job as a "draw hand" consisted of cleaning out the inside of chickens. She described the operation as follows:

The chickens are coming down on a line at various intervals and my job was to clean the guts out of a chicken with my hand. I could work a little bit with the left hand . . . . I constantly reach and pull. I reach over about shoulder high.

. . .

Your arm is constantly moving all the time.

. . .

I did most of the work with the right arm.

By 8 September 1976, the pain in plaintiff's right arm had worsened to the point that she was no longer able to do her job. Since then, she has worked at only a few odd jobs.

On 19 August 1977, a second hearing was held, and the testimony of Dr. James Urbanik, an orthopedic surgeon at Duke University Medical Center, was taken. Dr. Urbanik examined plaintiff on 3 June 1977 and determined that she had "calcific bursitis and some suggestion of adhesive capsulitis . . . . My impression was that she had bilateral adhesive capsulitis . . . and she also had calcification in . . . the shoulder [tendons and ligaments]." In the doctor's opinion plaintiff had sustained a ten percent permanent partial disability in each arm as a result of the calcification. Moreover, he stated that he believed "the symptoms and x-ray findings and physical findings were caused by the type of work—the use of the arms elevated above the head . . . ." The "chronic repetitive stress" to plaintiff's shoulders from doing her regular work over a period of time caused the condition, Dr. Urbanik found. He further suggested that plaintiff was more susceptible to the condition because "it is not normal to place the arms above the head all the time."

On 15 September 1977 hearing examiner Denson filed her opinion and award, finding, among other things, that the calcification of both plaintiff's arms "was caused by her employment and the rapid, repetitive overhead reaching"; concluding therefrom that plaintiff had sustained a ten percent permanent partial disability in each arm resulting from an occupational disease "caused by her employment . . . and conditions of that employment which were characteristic of and peculiar to her employment"; and awarding plaintiff compensation in the amount of $86.40 per week for the period between 8 September 1976 and 3 June 1977, and $86.40 per week for forty-eight weeks beginning 3 June 1977.

When the matter came on for review before the full commission on 24 February 1978, that body concluded that the evidence

lacked "sufficient clarity to arrive at a decision." Hence, the case was ordered remanded so that testimony could be more fully developed on the following questions:

1. Does plaintiff suffer from bursitis due to intermittent pressure in the employment?

2. What is Dr. Urbanik's opinion, assuming that the hypothetical question recites that plaintiff's work involved raising the arms only to about the shoulder level?

3. Does any physician feel that plaintiff has a disease which has proven to be due to the causes and conditions which are characteristic of and peculiar to her particular trade, occupation or employment?

4. Does plaintiff have an ordinary disease of life to which the general public is equally exposed outside of the employment?

Thus, a third hearing was held on 11 September 1978. Dr. Urbanik testified at length concerning the technical distinctions between bursitis and calcification, and concluded that plaintiff was suffering from calcification "of the ligaments near the bursa . . . caused as the result of the intermittent pressure in her employment." When asked whether his diagnosis would be affected by the fact that plaintiff raised her arms only to shoulder level, as opposed to raising them over her head, Dr. Urbanik answered: "[I]t would be my opinion that her symptoms, x-ray finding and physical findings were caused by her type of work, namely drawing chickens." He indicated, additionally, that plaintiff "could have" an occupational disease and that the disease "could be" due to the peculiar characteristics of her employment. "It would be accurate to say, despite that many people suffer from this disease, the particular characteristics of the plaintiff's employment as a draw-hand ran more of a risk than a member of the general public."

On cross-examination the doctor stated again that, if the "true facts" were that plaintiff did not raise her arms over her head in her job, but raised them only to shoulder level, it would still be his opinion "that such could have been the cause of the condition I found in her shoulder. I do not make any great distinctions."

On 30 October 1978 the full Commission, "[h]aving reviewed the record in its entirety and as expanded," adopted as its own the original opinion and award filed 15 September 1977 by hearing examiner Denson. Being of the belief that the opinion as written was "a correct determination of the rights and liabilities of the parties", the Commission made no substantive changes. Defendants appealed.

*Carolyn McAllaster for plaintiff appellee.*

*Spears, Barnes, Baker & Hoof, by Alexander H. Barnes, for defendants appellants.*

HEDRICK, Judge.

It is the duty of the Industrial Commission to make findings of fact and conclusions of law to determine the issues raised by the evidence in a case before it. G.S. § 97-84; *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515 (1941). Specific findings covering the crucial questions of fact upon which a plaintiff's right to compensation depends are required, *Morgan v. Thomasville Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968), and the importance of this responsibility cannot be overstated. As our Supreme Court has observed,

> It is impossible to exaggerate how essential the proper exercise of the fact-finding authority of the Industrial Commission is to the due administration of the Workmen's Compensation Act. The findings of fact of the Industrial Commission should tell the full story of the event giving rise to the claim for compensation. They must be sufficiently positive and specific to enable the court on appeal to determine whether they are supported by the evidence and whether the law has been properly applied to them. It is obvious that the court cannot ascertain whether the findings of fact are supported by the evidence unless the Industrial Commission reveals with at least a fair degree of postiveness what facts it finds. It is likewise plain that the court cannot decide whether the conclusions of law and the decision of the Industrial Commission rightly recognize and effectively enforce the rights of the parties upon the matters in controversy if the Industrial Commission fails to make specific findings as to each material fact upon which those rights depend.

*Morgan v. Thomasville Furniture Industries, Inc., supra* at 132, 162 S.E. 2d at 623 [quoting from *Thomason v. Cab Co.*, 235 N.C. 602, 70 S.E. 2d 706 (1952)].

The critical issue raised by the evidence in the present case is whether the calcification of tendons and ligaments in plaintiff's shoulders, resulting in a ten percent permanent partial disability to both arms, is an occupational disease within the meaning of G.S. § 97-53(13). This issue engenders two distinct findings of fact which must be made: (1) an explicit description of plaintiff's duties in performing her occupation, and (2) a determination of whether such duties caused the calcification and resulting disability to either or both of plaintiff's arms. With respect to the resolution of this issue, the Commission, by adopting as its own the findings and conclusions embodied in Deputy Commissioner Denson's opinion and award, made the following relevant findings:

## FINDINGS OF FACT

1. Plaintiff was reemployed by defendant employer in the early part of 1975 as a draw hand. Her job was to reach into chickens which were hanging on a line and pull out the insides. *This involved repetitive reaching overhead,* primarily with her right arm.

2. When plaintiff began her employment, the line on which the chickens moves was not automated. Sometime before Christmas 1975, the line became automated. The machine was supposed to remove the inside of the chickens so the number of employees used as draw hands was reduced. In point of fact, however, the machine often failed to remove all the insides and, in addition, made the line much faster. *The rapidity of plaintiff's repetitive overhead reaching increased.* The situation was aggravated by the fact that plaintiff was training other draw hands and felt responsible for the thoroughness of their work as well. Although using primarily her right arm for the work, *plaintiff also was frequently using her left.*

. . .

9. Plaintiff's calcification of both arms was caused by her employment and the *rapid, repetitive overhead reaching.*

The reaching plaintiff was required to do in her employment is characteristic of and peculiar to her occupation. [Emphasis added.]

The difficulty with these findings is that the record is devoid of any evidence that plaintiff's duties required "rapid, repetitive overhead reaching." This error is compounded by the fact that the doctor who testified as to causation originally based his opinion on the assumption that the plaintiff, in performing her duties, was required to repeatedly reach overhead. Thus, his opinion as to causation was rendered feckless and accordingly invalidated the deputy commissioner's finding that the calcification of the ligaments and tendons in plaintiff's arms was caused by her performance of her duties as a draw hand.

Apparently aware of the deficiencies in the findings and conclusions made by the hearing officer in the opinion and award dated 15 September 1977, the Commission, when the matter came before it for the first time, remanded the case "for additional testimony" because the evidence before it "lacks sufficient clarity . . . ." Specifically and significantly, the Commission requested a clarification of the evidence regarding the nature of the reaching plaintiff was required to do. At the subsequent hearing, both Dr. Urbanik and the personnel manager of the defendant Gold Kist were examined extensively on that issue. Clearly, the evidence adduced at this final hearing was sufficient to support a finding that the calcification in one or both of plaintiff's arms was caused by the "intermittent pressure" or the "chronic stress" of repeatedly reaching out with her arms.

However, when the matter came back before the full Commission after the hearing it ordered, it inexplicably chose to ignore the plain evidence of how plaintiff performed her job. That evidence is manifest throughout this record; yet, the final opinion and award of the Commission contains the same infirmities as it apparently recognized when it remanded the case for a clarification of the evidence regarding the manner in which the plaintiff did her job. In short, the Commission has failed to make findings and conclusions sufficient to determine the critical issue raised by the evidence.

While there is evidence in this record to support a conclusion that this plaintiff has sustained an occupational disease because of

the calcification in her shoulders, *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979); 3 Larson, Workmen's Compensation Law § 79.52 (1976), it is not for the appellate court to tell the Commission what findings to make upon remand. But, it is for this Court to require the Commission to carry out its duties with respect to making definitive findings required by the statute. For the reasons stated, the opinion and award of the Commission dated 30 October 1978 is vacated, and the cause is remanded for more definitive findings and conclusions based on the evidence in the present record.

Vacated and remanded.

Judges CLARK and MARTIN (Harry C.) concur.