DENNIS P. SLATTON, Employee, Plaintiff v. METRO AIR CONDITIONING, INC., Employer; COMMERCIAL UNION INSURANCE COMPANY, Carrier, Defendants

No. 9310IC1219

(Filed 6 December 1994)

**Workers' Compensation § 415 (NCI4th)— depositions missing from file—full review not made by full Commission**

The full Industrial Commission failed to satisfy its duty to review the evidence and findings of fact in full and failed to satisfy its duty to make specific findings of fact and conclusions of law with respect to each issue raised by the evidence and upon which plaintiff's right to compensation depended where the depositions of four physicians and one vocational rehabilitation counselor, which contained the only medical testimony submitted in evidence, were missing from the file under review by the full Commission.

**Am Jur 2d, Workers' Compensation §§ 686 et seq.**

Appeal by plaintiff from an Order filed 24 June 1993 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 September 1994.

*Robin E. Hudson for plaintiff-appellant.*

*Young Moore Henderson & Alvis, P.A., by J.A. Webster III, for defendants-appellees.*

THOMPSON, Judge.

In this case the Industrial Commission denied workers' compensation benefits to an employee, finding that the employee was unable

to prove that: (1) he had sustained a compensable occupational disease; and (2) his employment with the defendant was a contributing factor to the alleged occupational disease. We find that the review conducted by the Full Commission did not satisfy the mandate of N.C. Gen. Stat. § 97-85 to review the evidence and findings of fact in full. The facts and the procedural history follow.

The defendant employer (Metro) was a heating and air conditioning installation company. Prior to working at Metro the plaintiff had been working in the heating and air conditioning industry for a number of years. Plaintiff worked at Metro from February 1988 to May 1988. His hourly pay was $9.50. At Metro plaintiff was employed as a "rough in" mechanic, in the course of which he frequently cut metal duct work with spring action snips, which he used in his right hand. The snips were heavier than pliers, made of steel and required a strong squeezing action to operate. Plaintiff was also required to lift and install overhead piping duct work, range hoods and venting. On many days, plaintiff spent at least five hours doing overhead work.

After working at Metro and using the snips for about two weeks, the plaintiff developed soreness and numbness in his fingers, which woke him up at night with the feeling that there were "a bunch of little needles" in his hands. At the same time, the plaintiff also began to have shoulder pain. Plaintiff described his shoulders as feeling very painful, as if his bones were grinding since they made sounds like rice krispies. After some period of time, the pain became more frequent and began affecting how much he could lift. When he began working for Metro he could lift 100 to 150 pounds and as time went on the pain worsened so he could lift very little. Although plaintiff had had shoulder pain at times in the past, the pain was minimal.

Several weeks after his employment with the defendant began, the plaintiff contacted the health care service at Kaiser Permanente. On 7 March 1988 plaintiff reported to the nurse on the telephone that he had, "bad pain in his shoulders, radiating to both hands, right side pain . . . can't lift . . . can't sleep at night." The notes from Kaiser reveal that plaintiff called again on 18 March 1988 with complaints of increasing pain in both shoulders and numbness in the right hand.

Plaintiff began to have trouble with production demands. Subsequently, plaintiff was called into the office by his supervisor, Mr. Jake Williamson, Jr., who was aware that the plaintiff was having problems and had recommended that he see a doctor. Mr. Williamson was concerned because plaintiff's shoulder problem was affecting his ability

SLATTON v. METRO AIR CONDITIONING

[117 N.C. App. 226 (1994)]

to perform his job. Plaintiff told Mr. Williamson that he had gone to the doctor as he had suggested and that his shoulders were hurting and that the doctor had recommended surgery which would result in plaintiff's missing two months of work. On the next work day, when plaintiff came to work, he was told that his pay would be cut $2.00 an hour because he was unable to work as quickly as before, or he could quit. Plaintiff refused the reduction in pay and was terminated.

Subsequent to his work at Metro, plaintiff worked for three to four months at Weather Master, another heating and air conditioning installation company. However, plaintiff's job duties at Weather Master were of a somewhat different nature. At Weather Master plaintiff was a "trim-out" mechanic and rarely performed overhead work or used snips. Plaintiff received $9.00 per hour for his work at Weather Master. Plaintiff was discharged from Weather Master for reasons other than his physical condition.

When plaintiff left his employment at Weather Master, he unsuccessfully attempted to get work with various heating and air conditioning companies in the area. In August of 1988 he went to the vocational rehabilitation office where he met with Susan Adams. For approximately 9 months plaintiff went every other week and took tests in order to find employment consistent with his limitations. In April 1989, through his efforts in vocational rehabilitation, the plaintiff found a job with Accu-Fab and worked there for a short time, earning $5.75 per hour. Plaintiff left his job with Accu-Fab because he was required to do work which exceeded his physical limitations. When he informed his supervisor that he could not perform the job, he got into an altercation which caused him to lose the job.

The plaintiff then chose to work for himself so that he could work as much or as little as his limitations would allow. His actual earnings were entered into the record in the form of the books and records of his business.

On or about 11 October 1989 plaintiff filed a claim for workers' compensation benefits, alleging disability of an unknown extent due to the occupational diseases of bursitis and tendinitis in his shoulders and carpal tunnel syndrome in his wrists. The claim alleged that these conditions were all related to trauma, intermittent pressure and repetitive motion in his employment in the heating and air conditioning business.

## SLATTON v. METRO AIR CONDITIONING

[117 N.C. App. 226 (1994)]

The case was heard before Deputy Commissioner Charles Markham on 23 May 1990; the parties subsequently took depositions of three physicians who testified on behalf of the plaintiff: Kapil Rawal, M.D., Robert J. Starkenburg, M.D., and George Brothers, M.D. In addition, the parties took the deposition testimony of Susan Catherine Adams, a vocational counselor who testified on behalf of the plaintiff, and Lillian R. Horne, M.D., who testified on behalf of defendant. The Deputy Commissioner denied plaintiff's claim and plaintiff appealed to the Full Industrial Commission.

The Full Commission affirmed the decision of the Deputy Commissioner in a decision which contains three separate opinions, one by each sitting member of the Full Commission. Commissioner James J. Booker rewrote some of the findings and conclusions set forth in the Opinion and Award of the Deputy Commissioner; Chief Deputy Commissioner Dianne Sellers (sitting for absent Commissioner Harold Davis) concurred and adopted the findings of fact and conclusions of law set forth in the Opinion and Award of the Deputy Commissioner; Commissioner J. Randolph Ward dissented on the ground that five depositions, which contained all of the medical evidence relevant to the case and which were in evidence before the Deputy Commissioner, were missing from the file under review by the Full Commission. In his opinion the Full Commission could not carry out its duty to review the award without that evidence. Plaintiff appealed to this Court in forma pauperis.

On appeal, plaintiff argues that the Full Commission failed to carry out its duty to: (1) review in full the evidence and findings of fact contained in the decision of the Deputy Commissioner; and (2) make specific findings of fact and conclusions of law necessary to determine whether the plaintiff had one or more occupational diseases and whether his last injurious exposure occurred at Metro. We agree.

Plaintiff argues that the Full Commission did not review in full the evidence and findings of fact contained in the decision of the Deputy Commissioner because five depositions in evidence before the Deputy Commissioner were missing from the file under review by the Full Commission. We agree.

The nature of the Full Commission's duty to review the decision of the Deputy Commissioner is set forth in N.C. Gen. Stat. § 97-85. The Full Commission has a duty to review the evidence and findings of fact in full. *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374

S.E.2d 610, 613 (1988); *Vieregge v. N.C. State University*, 105 N.C. App. 633, 637-642, 414 S.E.2d 771, 773-776 (1992); *Braswell v. Pitt County Memorial Hospital*, 106 N.C. App. 1, 8, 415 S.E.2d 86, 90 (1992) (Hedrick, C.J., concurring).

Of the five deposition transcripts missing from the file before the Full Commission, three transcripts contained the testimony of the three physicians testifying on behalf of the plaintiff, one transcript contained the testimony of the only physician testifying on behalf of the defendant, and one transcript contained the testimony of a counselor from a vocational rehabilitation service testifying on behalf of the plaintiff. These depositions contained the only medical testimony submitted into evidence.

Plaintiff's right to compensation for the alleged occupational diseases, including the question of whether or not his last injurious exposure occurred at Metro, involved the resolution of medical questions. Yet, the Full Commission issued an order denying plaintiff compensation without the benefit of the depositions of the four physicians and one vocational rehabilitation counselor.

Since none of the testimony of the four physicians was before the Full Commission, it is difficult to understand how Chairman James J. Booker could conclude in finding of fact #14 contained in his opinion:

Considering the impact of the foregoing factors, the Commission finds that there is no credible testimony from any physician that plaintiff's complained of conditions received any aggravation or significant causal contribution as a consequence of plaintiff's work activities at Metro. As stated by Deputy Commissioner Markham, "medical opinions responding to hypothetical questions embracing facts of dubious credibility cannot be accepted as a basis for a finding of fact."

Without the benefit of the missing depositions, the Chairman simply had no basis for any of the conclusions contained in finding of fact #14. Commissioner Ward stated in dissent:

I dissent, without reaching the merits of the case, on the ground that five depositions in evidence before the Deputy Commissioner were and remain missing from the file under review by the Full Commission, including those of physicians whose testimony that [sic] figure prominently in the appellant's arguments to the Commission. Until these are found or replaced, the Full Commission cannot carry out its duty to review the award.

Like the dissenting Commissioner, we conclude that the review conducted by the Full Commission without the five missing depositions did not satisfy the mandate of N.C. Gen. Stat. § 97-85 to review the evidence and findings of fact in full. *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988). Before the Full Commission attempted to address the merits of plaintiff's claim it should have requested the parties to submit the missing depositions.

Plaintiff also argues that the Full Commission failed to carry out its duty to make specific findings of fact and conclusions of law necessary to determine whether plaintiff had one or more occupational diseases and whether his last injurious exposure occurred at Metro. We agree.

The Industrial Commission has an obligation to make specific findings of fact and conclusions of law determining each issue which is raised by the evidence and upon which plaintiff's right to compensation depends. *Cannady v. Goldkist*, 43 N.C. App. 482, 485, 259 S.E.2d 342, 344 (1979). The Industrial Commission also has an obligation to decide all matters in controversy between the two parties. *Rocky Mount Mills*, 92 N.C. App. at 482, 374 S.E.2d at 613.

Without the five depositions containing all of the medical evidence necessary to resolve the issues, the Full Commission could not have determined what issues might have been raised by the evidence. However, the decision of the Deputy Commissioner does make it clear that the issues of whether plaintiff had one or more occupational diseases and whether his last injurious exposure occurred at Metro were raised by the evidence. These issues had to be resolved in order to determine whether plaintiff should be compensated. Because the Full Commission never considered the medical evidence necessary to determine the issues of occupational disease and last injurious exposure, the findings of fact and conclusions of law of the Full Commission regarding these issues, whether adopted from the decision of the Deputy Commissioner or made by the Full Commission, cannot stand.

We therefore hold that the Full Commission failed to satisfy its duty to review the evidence and findings of fact in full and failed to satisfy its duty to make specific findings of fact and conclusions of law with respect to each issue raised by the evidence, and upon which plaintiff's right to compensation depends. The cause is remanded to the Commission, so that it may consider the five depositions containing the testimony of the four physicians and the voca-

tional rehabilitation counselor. After reviewing those five depositions along with the other evidence submitted by the parties, the Full Commission should make specific findings of fact and conclusions of law on the issues of occupational disease and last injurious exposure.

Reversed and remanded.

Chief Judge ARNOLD and Judge MARTIN concur.