LAURA MARTINEZ, GUARDIAN AD LITEM FOR J. MICHAEL MARTINEZ v. WESTERN CAROLINA UNIVERSITY

No. 8010IC296

(Filed 21 October 1980)

**State § 10.2– tort claim – insufficient findings as to negligence, proximate cause – remand for proper findings**

In a tort claim action to recover for injuries to plaintiff's ankle while he was participating in a summer program for gifted children at Western Carolina University, the Industrial Commission failed to make sufficient findings of fact as to whether plaintiff's counselor, his dormitory housemother or an infirmary nurse was actively negligent in failing to obtain timely and adequate examination, diagnosis and treatment of plaintiff's injuries and, if so, whether such delay was a proximate cause of plaintiff's ultimate injuries, and the cause is remanded for proper findings of fact.

APPEAL by plaintiff from a decision and order of the Full Industrial Commission. Heard in the Court of Appeals 18 September 1980.

Plaintiff instituted this action before the North Carolina Industrial Commission under the State Tort Claims Act. G.S. 143-291 *et seq.*

Plaintiff's claim was initially heard before Deputy Commissioner Ben E. Roney, Jr. The evidence tended to show that in late June 1977, when plaintiff was 14 years old, he arrived at the campus of Western Carolina University to attend a summer program for gifted children. Plaintiff stayed in Leatherwood dormitory. His counselor was Randy Turpin and the housemother for the dormitory was Miss Gibbs. At approximately 1:00 p.m. on Saturday, 2 July 1977, plaintiff slipped in a puddle of water on the floor of Leatherwood dormitory. He felt a sharp pain in his right leg just above the ankle in the area of the Achilles tendon. Thereafter plaintiff spent some time lying down in his room with an ice pack on his right foot.

Later in the afternoon on the date of the accident, plaintiff informed Mr. Turpin that he had hurt his foot and requested that he be taken to a doctor. Mr. Turpin said that Miss Gibbs was the person in charge and for plaintiff to get in touch with her. It was plaintiff's understanding that he was not allowed to go to the infirmary unless he was accompanied by a counselor or Miss Gibbs and since Miss Gibbs could not be found he wasn't allowed to go. Plaintiff spoke with Miss Gibbs at about 8:30 p.m. and requested that he be taken to the infirmary that evening. Miss Gibbs advised the plaintiff that she would take him to the infirmary the next morning at 9:30.

At 9:30 a.m. on Sunday, 3 July, plaintiff was examined by Dr. Matthews at the infirmary. At that time plaintiff's ankle was swollen and he was experiencing a throbbing pain. Conservative treatment was advised for an Achilles sprain.

Laura Martinez, plaintiff's mother, first became aware of his injury when she called him on Tuesday, 5 July, at 10:00 p.m. Immediately after speaking with plaintiff, she spoke with Randy Turpin who assured her that her son would be carried to a medical doctor the next morning. She next communicated with her son at 5:00 p.m. on Wednesday, 6 July. At that time plaintiff informed his mother that he had not seen a doctor that morning and that his foot was dragging and was painful. Mrs. Martinez immediately called Miss Gibbs and asked her to get plaintiff to a doctor and to have plaintiff call her at 9:00 p.m. to inform her of the doctor's diagnosis.

When Randy Turpin learned late Wednesday afternoon that plaintiff had not been taken to see a doctor that morning as

plaintiff's mother had been promised, he took plaintiff to the infirmary. No physician was at the infirmary and plaintiff was treated by a nurse on that occasion. Plaintiff called his mother that evening at 9:00 and told her he had been to the infirmary, had seen a nurse, and the second diagnosis was a sprain.

On Thursday, 7 July, plaintiff was allowed to participate on a hike through mountainous terrain at the Joyce Kilmer National Park with the assistance of a stick and by taking shortcuts.

On Friday 8 July Dr. O'Neal called Mrs. Martinez at work around noon and informed her that her son had a ruptured Achilles tendon. Mrs. Martinez rented an airplane and her son was flown to Florence, South Carolina, for surgery. She testified that Dr. Ervin, the surgeon, told her that "the weeks delay made his operation very difficult . . . that he did not know if he could save it [plaintiff's foot], if the child would be crippled or not due to the fact so long a time had gone by . . . [and that] he knew it [the ruptured tendon] happened approximately a week before he saw him." Dr. Ervin stated in his letter of 20 March 1979:

> Mrs. Martinez has asked me specifically whether or not the scarring on Mike's leg would have been any less extensive without this week's delay. I do not think there would have been any difference in the size or healing of the scar regardless of the time of diagnosis. However, the repair of the tendon was definitely made more difficult because of the week's delay. There, of course, is the possibility that the wait may have made the tear or rupture of the tendon a more complete rupture over the period of time that the child continued to participate in camp activities.

> It is sometimes quite difficult to make a diagnosis of rupture of the tendon Achilles particularly if it is a partial rupture. This could be difficult for a camp nurse for instance. However, with the amount of difficulty that the patient evidently had, I do criticize delay in proper referral to a physician for examination. These comments are, of course, based on no specific knowledge on exactly how the situation was handled at camp.

Dr. Ervin also stated in his letter of August 29, 1977 "[w]alking on the foot for a week or so with the tendon in ruptured state, undoubtedly caused more in the way of swelling and scarring in the area of the rupture."

After the hearing, Deputy Commissioner Roney awarded plaintiff $13,500.00 as damages for pain, suffering and permanent scarring.

Defendant appealed to the full commission.

The full commission vacated the decision and order filed by the Deputy Commissioner and in lieu thereof substituted the following:

### FINDINGS OF FACT

1. Claimant was born on 28 December 1962. He was examined and treated by Dr. Allen on 3 June 1977 for a three-inch laceration of the right ankle over the Achilles tendon. The tendon was not involved as the laceration extended into the subcutaneous tissue only. Sutures were removed from the laceration on 13 June 1977. Claimant had made a satisfactory recovery and was discharged.

2. Claimant arrived at Western Carolina University on 19 June 1977 as an invitee for the purpose of participating in a Gifted Child Program. He was automatically invited to the 1977 program by reason of having participated therein during 1976. He was scheduled to participate in the botany program.

3. Claimant was running in the hall of the dormitory in which he resided on 2 July 1977 when he slipped in a puddle of water and fell. He experienced pain in the right posterior aspect of the right leg on the occasion of the slip and fall. Claimant was taken to the infirmary at 9:30 a.m. on 3 July 1977. He was examined on this occasion by Dr. Matthews. Conservative treatment was tendered for an Achilles sprain. He spent the remainder of 3 July 1977 (Sunday) at rest.

4. Claimant is familiar with pain due to sprained ankles by reason of past experience. He was initially of the impression that the injury consisted of a sprained ankle. He

noticed that the condition of his right leg was worsening by 5 July 1977 and began to think that the injury was worse than a sprain. He saw a nurse in the infirmary at 6:15 p.m. on 6 July 1977. The right ankle was wrapped in an ace bandage. Claimant was dragging his right foot by this time. No physician was present at the infirmary on this occasion. Alva Porter was the nurse on duty at the infirmary at 6:15 p.m. on 6 July 1977. The infirmary is open 24 hours daily. Six o'clock p.m. is after doctors' hours.

5. Claimant was allowed to participate in a hike at the Joyce Kilmer National Park on 7 July 1977 (Thursday). Claimant negotiated the hike with the assistance of a stick and by taking shortcuts. The course of the hike covered mountainous terrain.

6. Randy Turpin was a counselor in the Gifted and Talented Program sponsored by Western Carolina University during 1977. Claimant was on Randy Turpin's hall. Mr. Turpin was directly responsible for the welfare and conduct of the students assigned to him. Miss Gibbs supervised the activities of the various counselors. Randy Turpin was present during the 7 July 1977 hike at the Joyce Kilmer National Park.

7. Claimant was examined by Dr. Donald P. O'Neal in the infirmary at 9:30 a.m. on 8 July 1977. Physical examination revealed an obvious deformity at the Achilles insertion on the right lower extremity. The diagnosis was ruptured Achilles tendon on the right. Claimant was admitted to the infirmary at 10:30 a.m. on 8 July 1977. He was taken to the Asheville-Hendersonville Airport and flown to Florence, South Carolina.

8. Claimant was examined by Dr. Ervin on 8 July 1977 and admitted to the McLeod Memorial Hospital in Florence, South Carolina. Surgical repair of the ruptured right Achilles tendon was accomplished by Dr. Ervin on 9 July 1977. He was discharged from the hospital on 10 July 1977.

9. The site of the ruptured Achilles tendon that was repaired on 9 July 1977 was well above the three-inch laceration that was cleaned and sutured by Dr. Allen on 13 June 1977.

Martinez v. Western Carolina University

10. The cost of transporting claimant by air from the Asheville-Hendersonville Airport to Florence, South Carolina was $144.00. The total charges for treatment of the injury giving rise hereto amounted to $1,410.76.

11. Claimant was required to leave the Gifted and Talented Program sponsored by Western Carolina University one week early by reason of the ruptured Achilles tendon.

12. The defendant's employees named in plaintiff's pleading were guilty of no negligent conduct proximately causing damage to the minor, J. Michael Martinez.

Plaintiff appealed.

*Attorney General Edmisten, by Assistant Attorney General Sandra M. King, for the State.*

*S. Thomas Walton, for the plaintiff-appellant.*

MARTIN (Robert M.), Judge.

Plaintiff assigns as error the signing and entry of the order by the Industrial Commission. An exception to the signing of an order presents for review the question of whether the facts found support the conclusions of law. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590 (1962). The determination of negligence, proximate cause and contributory negligence requires an application of principles of law to the determination of facts. These are, therefore, mixed questions of law and fact and so are reviewable on appeal from the commission, the designations "Finding of Fact" or "Conclusion of Law" by the commission not being conclusive. *Brown v. Board of Education,* 269 N.C. 667, 153 S.E. 2d 335 (1967).

It has long been the rule in this State that the Industrial Commission must make findings of fact and conclusions of law to determine the issues raised by the evidence in a case before it. Specific findings covering the crucial questions of fact upon which a plaintiff's right to compensation depends are required. *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E. 2d 28 (1968); *Cannady v. Gold Kist,* 43 N.C. App. 482, 259 S.E. 2d 342 (1979); *Morgan v. Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968).

In the case of *Thomason v. Cab Co.*, 235 N.C. 602, 70 S.E. 2d 706 (1952), Judge Ervin, speaking for the court, stated:

> If the findings of fact of the Industrial Commission are supported by competent evidence and are determinative of all the questions at issue in the proceeding, the court must accept such findings as final truth, and merely determine whether or not they justify the legal conclusions and decision of the commission. (Citations omitted.) But if the findings of fact of the Industrial Commission are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the proceeding must be remanded to the commission for proper findings. (Citations omitted.)

*Id.* at 605, 70 S.E. 2d at 708.

It is clear that the plaintiff in this proceeding raised the issue of whether Randy Turpin and Miss Gibbs failed to exercise due care and were actively negligent in failing to obtain timely and adequate examination, diagnosis and treatment of claimant's injuries. This is a determinative question of fact in the case *sub judice*, as there was evidence tending to show that the delay in diagnosing the ruptured Achilles tendon enhanced the seriousness of plaintiff's injury. The issue engenders three distinct findings which must be made: (1) was there an unreasonable delay in examining, diagnosing and treating plaintiff's injuries?, (2) if so, was the delay caused by Randy Turpin, Miss Gibbs or the infirmary nurse, Alva Porter? and (3) if so, was the delay a proximate cause of plaintiff's injury? The Full Commission failed to make any of these findings.

The rule espoused by this Court in *Smith v. Construction Co.*, 27 N.C. App. 286, 218 S.E. 2d 717 (1975), a case involving a claim under the Workmen's Compensation Act, is applicable to the case *sub judice*. In *Smith*, the claimant had received compensation for temporary total disability under an agreement with his employer. He did not notify the Industrial Commission in writing within the time required by statute that he claimed additional benefits under the Workmen's Compensation Act. Smith contended that his failure to comply with the statute should not bar his claim for additional compensation because his delay in requesting a hearing resulted from his reliance on

representations made by defendant employer's secretary, and defendant was therefore estopped from pleading the lapse of time as a defense to his claim. The findings of fact of the hearing commissioner included findings that the defendant's secretary made the statements, that Smith relied on her statements, and that because of his reliance Smith failed to notify the Industrial Commission of his claim for additional benefits within the time required by statute. The hearing commissioner found that defendants were estopped to plead the lapse of time and made an award in favor of plaintiff. Defendants appealed to the full commission who vacated the opinion and award of the hearing commissioner. In denying Smith's claim due to his failure to notify the Industrial Commission within the statutory time period, the full commission failed to make any findings of fact regarding the statements of defendant employer's secretary or Smith's reliance thereon. The full commission merely concluded that "plaintiff has shown no conduct on the part of the defendant which constitutes estoppel." *Id.* at 290, 218 S.E. 2d at 719. On appeal by Smith, this Court held "when evidence is presented in support of a material issue raised, it becomes necessary for the commission to make a finding one way or the other." *Id.* at 291, 218 S.E. 2d at 720. We stated:

> While the evidence in the instant case on the question of estoppel was minimal, we think it was sufficient to raise the issue and require a finding of fact on the issue. . . . [T]he hearing commissioner made a finding on the question. . . . [The full commission] merely eliminated the hearing commissioner's finding and made no finding in its place. *The conclusion that "plaintiff has shown no conduct on the part of the defendant which constitutes estoppel" is not sufficient to ,meet the requirement with respect to findings of fact.* (Emphasis added.)

*Id.*

In the case *sub judice,* Deputy Commissioner Roney's decision and award contained the following findings:

> 12. The delay in diagnosing the ruptured Achilles tendon increased the difficulty of surgical repair and subsequent treatment. The delay did not, however, contribute to any permanent disability.

13. The cumulative conduct of those individuals responsible for supervising claimant's activities while participating in the Gifted and Talented Program sponsored by Western Carolina University and the conduct of the personnel on duty in the infirmary at 6:15 p.m. on 6 July 1977 wanted for due care under the circumstances attendant herewith. This want of due care materially contributed to the seriousness of the injury requiring claimant's early departure from the program. The Achilles tendon was sprained during the fall on 2 July 1977. The sprain had developed, by reason of claimant's continued participation in the program, into a rupture by the evening of 6 July 1977. Claimant was nonetheless allowed to participate in a hike over mountainous terrain on 7 July 1977. He was much worse following this activity.

In its decision and order the full commission eliminated these two findings by the hearing commissioner and made the following finding in their place: "12. The defendant's employees named in plaintiff's pleading were guilty of no negligent conduct proximately causing damage to the minor, J. Michael Martinez."

The commission also found as a fact that Randy Turpin "was directly responsible for the welfare and conduct of the students assigned to him. Miss Gibbs supervised the activities of the various counselors." Plaintiff was on Randy Turpin's hall. Both Randy Turpin and Miss Gibbs undertook to care for and supervise the students assigned to them, including the plaintiff herein. We hold that the commission's finding that "the defendant's employees ... were guilty of no negligent conduct proximately causing damage to ... Martinez" is not sufficient to meet its duty to make specific findings as to each material fact upon which the rights of the parties depend.

Upon remand it is not for this Court to tell the commission what findings to make. *Cannady v. Gold Kist, supra.* However, for failure of the commission to make sufficient findings of fact to support its conclusions of law, the opinion appealed from is vacated and this cause is remanded to the Industrial Commission for proper findings of fact, conclusions of law and determination of the rights of the parties. *Gaines v. Swain & Son, Inc.,* 33 N.C. App. 575, 235 S.E. 2d 856 (1977).

Vacated and remanded.

Judges VAUGHN and WEBB concur.