CLAUDE M. VIAR, JR., Co-administrator of the Estate of MEGAN RAE VIAR, Deceased, and Co-administrator of the Estate of MACEY LAUREN VIAR, Deceased, Plaintiff v. N.C. DEPARTMENT OF TRANSPORTATION, Defendant

No. COA03-25

(Filed 3 February 2004)

**Tort Claims Act— negligence—motor vehicle accident—failure to install median barrier on highway**

The Industrial Commission erred in a case brought under the Tort Claims Act by concluding that plaintiff failed to show that the North Carolina Department of Transportation (NCDOT) was negligent when it did not install a median barrier on the section of I-85 highway where the pertinent motor vehicle accident took place, because: (1) the Industrial Commission's findings of fact were inadequate to support its conclusion that defendant's actions in delaying construction of the proposed median barrier were reasonable with regard to maintaining safe transportation; (2) the Industrial Commission misapplied the law in its consideration of the monetary cost of installing a median barrier when it failed to reflect consideration of cost in the context of the risk of harm and the likely severity of harm; (3) the Industrial Commission's findings of fact failed to address plaintiff's central contention alleging negligence in NCDOT's delay after it made its initial discretionary decision about when, where, and on what prioritization schedule to install the barriers; (4) the Industrial Commission's findings of fact failed to address the risk of injury as related to the presence or absence of median barriers; (5) the public duty doctrine has never been applied to shield NCDOT from acts of negligence, and the construction and maintenance of the state highway system is not an exercise of the NCDOT's discretionary authority conferred upon it by statute; and (6) dismissal of this appeal for technical appellate rule violations would amount to manifest injustice.

Judge Tyson dissenting.

Appeal by plaintiffs from opinion and award entered 20 August 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 October 2003.

*DeVore, Acton, & Stafford, P.A., by Fred W. DeVore, III, for plaintiff-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General William H. Borden, for defendant-appellee.*

LEVINSON, Judge.

On 12 June 1997 Megan and Macey Viar were killed in a motor vehicle accident occurring in Rowan County, North Carolina, on Interstate Highway 85 (I-85). Melissa Viar, the decedents' sister, was driving south on I-85 in a heavy rainstorm when she lost control of her car, hit another southbound vehicle, went across the grass median separating the north and southbound lanes, and collided with a tractor-trailer truck. Her younger sisters died instantly, and Melissa suffered serious injuries.

On 6 March 1998 Claude Viar, father of the decedents and plaintiff herein, filed an affidavit with the Industrial Commission under the North Carolina Tort Claims Act, N.C.G.S. § 143-291 *et seq.*, stating a claim for negligence against the N.C. Department of Transportation (NCDOT). Plaintiff alleged his daughters' deaths were proximately caused by the absence of a guard rail or median barrier between the north and southbound lanes of I-85. Plaintiff's affidavit was later amended to allege negligence on the part of one or more of the following employees of NCDOT: Garland Garrett, Jr., Larry Goode, B.G. Jenkins, Jr., Don Morton, J. Don Goins, Douglas Waters, and Tom Shearin, "or any other state employee who would have been responsible for not placing median barriers in the stretch of I-85 in Rowan County where this accident occurred." Plaintiff's claim was heard before a deputy commissioner of the Industrial Commission in May of 2000, and on 20 November 2000 the deputy commissioner issued an opinion denying plaintiff's claim. Plaintiff appealed to the Full Commission, which reviewed his claim on 17 December 2001. On 20 August 2002 the Industrial Commission issued an opinion and award affirming the decision of the deputy commissioner and denying plaintiff's claim. The Commission concluded that plaintiff had failed to show that NCDOT was negligent in not installing a median barrier on the section of highway where the accident took place. Plaintiff appeals from this opinion and award, and presents one argument on appeal: that the Industrial Commission erred by failing to find that the NCDOT's negligence in not installing median barriers in the section of I-85 where the accident occurred was the proximate cause of the decedents' death.

VIAR v. N.C. DEP'T OF TRANSP.

[162 N.C. App. 362 (2004)]

Standard of Review

Plaintiff's negligence claim was brought under the Tort Claims Act, N.C.G.S. § 143-291. "The Tort Claims Act was enacted in order to enlarge the rights and remedies of a person who is injured by the negligence of a State employee who was acting within the course of his employment. Pursuant to [N.C.G.S. § 143-291(a)], the [Industrial] Commission has exclusive jurisdiction to hear claims falling under this Act." *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405, 496 S.E.2d 790, 792-93 (1998) (citing *Wirth v. Bracey*, 258 N.C. 505, 508, 128 S.E.2d 810, 813 (1963)).

The Tort Claims Act directs the Industrial Commission to determine whether the plaintiff's claim "arose as a result of the negligence of any officer, employee, . . . or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where . . . a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C.G.S. § 143-291 (2003). Accordingly, " '[b]efore an award of damages can be made under the Tort Claims Act, there must be a finding of a negligent act by an officer, employee, servant or agent of the State.' " *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 100, 576 S.E.2d 345, 351 (2003) (quoting *Taylor v. Jackson Training School*, 5 N.C. App. 188, 191, 167 S.E.2d 787, 789 (1969). The plaintiff has the burden of proof on the issue of negligence. *Bailey v. N.C. Dept. of Mental Health*, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968).

The NCDOT is liable under the Tort Claims Act for the negligence of its employees. *Smith v. N.C. Dep't of ·Transp.*, 156 N.C. App. 92, 100, 576 S.E.2d 345, 351 (2003). Under current law, the State is liable for negligent omissions, as well as negligent actions. *Phillips v. N.C. Dept. of Transportation*, 80 N.C. App. 135, 136-37, 341 S.E.2d 339, 340-41 (1986). Further, liability does not require that the negligence of an employee be the sole proximate cause of injury. *Trust Co. v. Board of Education*, 251 N.C. 603, 609, 111 S.E.2d 844, 849 (1960).

On appeal, this Court "is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001) (citations omitted). The Commission's findings of fact are conclusive on appeal if supported by any competent evidence, notwithstanding the presence of other evidence that might have supported a contrary

finding. *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405, 496 S.E.2d 790, 793 (1998). "However, the findings of fact of the Industrial Commission are conclusive on appeal only when supported by evidence, and the Court, on appeal, may review the evidence to determine as a matter of law whether there is any evidence tending to support the findings." *Vause v. Equipment Co.*, 233 N.C. 88, 93, 63 S.E.2d 173, 177 (1951) (citing *Hildebrand v. Furniture Co.*, 212 N.C. 100, 193 S.E. 294 (1937)).

---

"The determination of negligence, proximate cause and contributory negligence requires an application of principles of law to the determination of facts. These are, therefore, mixed questions of law and fact and so are reviewable on appeal from the commission, the designations 'Finding of Fact' or 'Conclusion of Law' by the commission not being conclusive." *Martinez v. Western Carolina University*, 49 N.C. App. 234, 239, 271 S.E.2d 91, 94 (1980) (citing *Brown v. Board of Education*, 269 N.C. 667, 153 S.E.2d 335 (1967)). In the instant case, we conclude that the Industrial Commission's legal conclusions are based upon erroneous application of the law to the facts, and are not supported by its findings of fact.

Plaintiff's evidence established the following uncontested facts: In 1993, NCDOT completed a study of the relationship between median barriers on interstate highways and accidents in which a vehicle crosses the median strip (cross-median accidents) on interstate highways. The NCDOT study reviewed over 2900 accidents occurring between 1988 and 1991, and concluded that (1) cross-median accidents account for only 3% of interstate accidents but 32% of fatalities; (2) cross-median accidents are "steadily increasing" in number and severity, are three times as likely as other accidents to result in death, and caused 105 fatalities during the study period; (3) the number of cross-median accidents is not associated with impaired driving or with high driving speeds; and that (4) guardrails or median barriers installed in the median strip would prevent many, if not most, of these fatal cross-median interstate accidents in North Carolina. The 1993 NCDOT study identified the 24 sections of interstate highway with the greatest number of cross-median accidents, and prioritized these locations with regards to the installation of median barriers.

Neither relevant industry standard publications nor state and federal regulations required that median barriers be installed. Thus, the absence of median barriers did not place NCDOT in violation of statutory law or national road design standards. However, as a

result of its study, NCDOT officials decided that median barriers should be installed at 24 locations on N.C. interstate highways. NCDOT ranked these 24 locations in the order of priority for installation of guardrails.

Funding for NCDOT construction is allocated by the State legislature, and supplemented by certain federal funds. Funding is a complex process, requiring that NCDOT obtain input from various citizen and government groups, prioritize its projects, allocate resources, and coordinate projects when appropriate. The cost of adding a median barrier to the Rowan County I-85 location was estimated at $1,344,000.00, with annual maintenance estimated to be over $200,000. With all these factors in mind, NCDOT decided in 1993 to stagger the installation of median guardrails at the 24 identified locations over a five year period.

In 1994, the first of these 24 median barriers was completed, on I-40 between Raleigh and Research Triangle Park (RTP). There have been no fatal cross-median accidents on this segment of I-40 since the median barrier was installed. The section of I-85 where the accident at issue herein occurred (the "Rowan County I-85 location") was initially ranked number seven, but after median barriers were installed on I-40, the section of I-85 where the accident took place moved up to sixth place in the priority list. In 1993, NCDOT anticipated that the area of the Rowan County I-85 location would be widened during the five year time frame or shortly thereafter. To avoid installing temporary barriers that would need to be removed during construction, NCDOT decided to incorporate the addition of guardrails into this larger construction project, "unless additional accidents require earlier action." In 1995, following "several severe accidents" on this stretch of road, NCDOT reduced the speed limit in the stretch of I-85 where the accident occurred from 65 to 55 mph. As of the date of the accident, the I-85 widening project had not yet been funded, and NCDOT had not installed a median barrier along the Rowan County I-85 location.

Between January, 1994 and June, 1997 there were ninety-six (96) additional deaths resulting from cross-median interstate accidents on North Carolina's interstate highways. During this time period NCDOT did not install median barriers at any of the remaining 23 locations identified in the 1993 study. The accident that claimed the lives of the Viar girls occurred on 12 June 1997. Within a few weeks of the accident, funding was provided to install guardrails at all 23 highway segments chosen by NCDOT in 1993 for installation of median barriers.

The gravamen of plaintiff's evidence was that (1) the NCDOT was negligent in failing to install a median barrier at the Rowan County I-85 location within four years of its decision to do so, and that (2) the installation of median barriers almost immediately after the accident demonstrated that the resources to do so were available.

The defendant did not present any evidence at the hearing.

The Industrial Commission entered an order denying plaintiff's claim on the basis that plaintiff had failed to prove negligence. In its order, the Commission made 58 findings of fact. Findings 1 through 12 set out the facts surrounding the accident. Specifically, findings 6, 8, 9, and 10, state the following:

> 6. North Carolina Highway Patrol Trooper D.R. Brackman . . . affirmed there was extremely heavy rain on this evening. [He] stated it was one of the heaviest rains he could ever remember.
>
> . . . .
>
> 8. Trooper Brackman found the Viar vehicle had originally traveled in the outside of two (2) southbound lanes on I-85. Trooper Brackman also found the Viar vehicle struck another vehicle in the inside southbound lane of the divided highway causing both vehicles to enter the median.
>
> 9. This portion of I-85 is a straight and level road.
>
> 10. Trooper Brackman determined the Viar vehicle had then continued across the median and had been broadsided on the passenger side by a northbound tractor-trailer.

Findings 13 through 18 discuss the 1993 NCDOT study, NCDOT's decision to install median barriers at 24 locations, and its decision to incorporate the Rowan County I-85 median barrier with a planned widening of I-85. Findings 19 through 23 establish that NCDOT was not required by law to install median barriers, and was not in violation of nationally recognized road design standards by not having median barriers. Findings 24 through 35 set out in general terms the hierarchy and roles of certain NCDOT officials in NCDOT's decisions regarding what projects to undertake; these findings also outline the general procedures and policies governing NCDOT funding. Findings 36 through 56 set out the general considerations relevant to funding of NCDOT projects by the State legislature, and outline the general procedures that are followed by NCDOT in obtaining funding for road

work. Findings of fact 57 and 58 are more properly termed conclusions of law, and state the following:

57. The North Carolina Department of Transportation has the authority, duty and responsibilities to plan, design, locate, construct and maintain the existing public highways in the State of North Carolina.

58. The standard of care applicable to this case is negligence. The defendant's duty to the general public, including plaintiffs, is to plan, design, locate, construct and maintain the public highways in the State of North Carolina with reasonable care. The defendant is not strictly liable for every person injured on the roads subject to its jurisdiction. Several factors are relevant to defendant's performance of these duties including, but not limited to, funding limitations, coordination of construction projects, and implementation of alternative means to effect the safety of the public highways. Defendant has asserted that its decisions concerning the improvement of I-85, in the area of the accident in question, were reasonable and prudent because of limitations on funding, a desire to coordinate the installation of guardrails with the widening of the highway from four to six or eight lanes. In addition, defendant sought to make this stretch of road safer by reducing the speed limit from 65 miles per hour to 55 miles per hour. Although there was evidence that guardrails would have been prudent, the greater weight of the evidence is that defendant's actions in prioritizing the various installation of median guardrail projects, allocation of highway improvement funds due to budgetary constraints, coordination of the guardrails with other construction, and reduction in traffic speed were reasonable and prudent steps to effectuate the safety of the public on the highway in question. Therefore, the defendant did not breach its duty to the general public, and to plaintiff, and was not negligent.

On this basis the Industrial Commission ruled that plaintiff was not entitled to recover from NCDOT.

"Under the Tort Claims Act negligence, contributory negligence and proximate cause . . . are to be determined under the same rules as those applicable to litigation between private individuals." *Barney v. Highway Comm.*, 282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972) (citation omitted). Accordingly, we first review certain relevant common law principles of negligence law. The most basic of these is that:

The essence of negligence is behavior creating an unreasonable danger to others. To establish actionable negligence, plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury.

*Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988) (citing W. Prosser, Handbook of the Law of Torts § 31 (5th ed. 1984), and *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984)). In this regard, the NCDOT has a duty "to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods[.]" N.C.G.S. § 143B-346 (2003). Evidence of remedial measures, although "not admissible to prove negligence or culpable conduct" nonetheless is admissible "for other purposes such as 'proving ownership, control, or feasibility of precautionary measures, if those issues are controverted[.]'" *Smith v. N.C. Dept. of Nat. Resources*, 112 N.C. App. 739, 746, 436 S.E.2d 878, 883 (1993) (quoting N.C.G.S. § 8C-1, Rule 407). Further, a defendant's notice of a source of danger is also relevant to the question of whether NCDOT was negligent in failing to prevent the particular harm. *Gordon v. Highway Commission*, 250 N.C. 645, 647, 109 S.E.2d 376, 377-78 (1959).

We conclude that in the instant case the Industrial Commission's findings of fact fail to support its conclusion of law. We further conclude that the Industrial Commission failed to make findings of fact on certain crucial and material issues, and that it misapplied the law in its consideration of the monetary cost of installing a median barrier.

First, the Industrial Commission's findings of fact were inadequate to support its conclusion that defendant's actions in delaying construction of the proposed median barrier were reasonable with regard to maintaining safe transportation. Although the Commission made numerous findings, the majority of the findings are overly general or lack appropriate context. For example, the Commission found that the projected construction costs of the proposed median barrier were "$1,340,000.00 with annual maintenance costs of $245,549.00." Findings related to the Department of Transportation's annual budget, funding availability for the specific site, the likelihood of median accidents, and the likelihood of harm caused by such accidents

would help provide some appropriate context. Without such findings to provide an economic context, a bare recital of the projected costs of construction and maintenance of the median barrier is meaningless. Other findings by the Commission, outlining DOT procedures for implementing transportation projects and the requisite funding processes associated therewith, are similarly inadequate in their generality, and do not support a conclusion that defendant's delay in constructing the median barrier was reasonable.

---

We conclude next that, in addition to making generally insufficient findings of fact, the Industrial Commission erred in its analysis of the monetary cost of installing a median barrier. "Traditionally, courts have distinguished between negligence claims based on affirmative acts and those based on omissions." *Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App. 544, 553-54, 543 S.E.2d 920, 926 (2001) (citing David A. Logan and Wayne A. Logan, North Carolina Torts § 1.20, at 8 (1996)). Plaintiff herein alleged that NCDOT was negligent by omission, or failure to take actions necessary for the exercise of reasonable care. Thus, common law standards applicable to claims of negligent omission have particular relevance to our decision. In this regard, the Industrial Commission's conclusion that NCDOT was not negligent was based in large part on its consideration of the *monetary* cost of installing median barriers, and the Commission's assessment of various economic factors and considerations that shape NCDOT's budgetary decisions. We conclude that the Commission erred in its evaluation of this issue.

Generally speaking, a negligent omission is "the omission or failure to do that which a reasonable prudent person . . . would do[.]" *Billings v. Trucking Corp.*, 44 N.C. App. 180, 182, 260 S.E.2d 670, 672 (1979). In its determination of whether a party negligently failed to take the reasonable precautions to prevent harm, the Industrial Commission is *not* necessarily required to assess the financial aspects of a negligence claim. *See, e.g., Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 95, 576 S.E.2d 345, 348 (2003) (upholding an opinion regarding defendant's negligence that did not address the cost to NCDOT of installing warning signs). However, where, as here, the Commission makes at least twenty findings related to the financial cost to defendant, the Commission must *properly* assess the economic burden on defendant in assessing reasonable care.

The long-standing common law rule is that the economic cost of preventative measures is relevant to the issue of the failure to use

reasonable care only if it is evaluated *in connection with* the likelihood of the injury occurring in the absence of preventative measures, and of the severity of harm that would result from the injury:

> [T]he basic approach to negligence law outlined by Judge Learned Hand in *United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir. 1947), essentially defines negligence as the unreasonable balancing of the cost of safety measures against the risk of accidents. See id. at 173 (explaining that 'if the probability [of an accident] be called P; the injury, L; and the burden [of adequate precautions], B; liability depends upon whether B is less than L multiplied by P: i.e., whether B<PL').

*Smith v. WAMTA*, 290 F.3d 201, 215 (4th Cir. 2002) (Michael, Circuit Judge, concurring in part and dissenting in part), *cert. denied*, 537 U.S. 950, 154 L. Ed. 2d 296 (2002). Another case from the 4th Circuit noted that "a person's duty to prevent injuries from an accident 'is a function of three variables: (1) The probability that (the accident will occur); (2) the gravity of the resulting injury, if (it) does; (3) the burden of adequate precautions.' " *Pruitt v. Allied Chemical Corp.*, 523 F. Supp. 975, 978 n.11 (E.D. Vir. 1981) (quoting *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947)). This venerable framework for analyzing the conventional negligence standard has also been discussed in at least one N.C. case:

> Learned Hand proposed his famous cost-benefit equation in an effort to distinguish between risks which were worth taking and those which were not. . . . n3 Hand described the duty of an actor to protect against resulting injuries as being a function of three variables: (1) the probability (P) of injury occurring, (2) the gravity (L) of resulting injury, and (3) the burden (B) of adequate precautions. Hand described this relationship algebraically as an inquiry as to whether B<PL.

*Johnson v. Ruark Obstetrics*, 327 N.C. 283, 312 n.3, 395 S.E.2d 85, 102 n.3 (1990) (Justice Meyer, dissenting) (citing *United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir. 1947)).

Consideration of the economic cost or burden of precautions in relation to the likelihood and degree of risk is consistent with the general rule that negligence is the failure to take reasonable care:

> There are various ways in which courts formulate the negligence standard. The . . . most precise is . . . whether the burden of precaution is less than the magnitude of the accident, if it occurs,

multiplied by the probability of occurrence. . . . This is the famous 'Hand Formula'[.] . . . Illinois courts do not cite the Hand Formula but instead define negligence as failure to use reasonable care, a term left undefined. But as this is a distinction without a substantive difference, we have not hesitated to use the Hand Formula[.] . . .

*McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1556-57 (7th Cir. 1987). The same principle has also been articulated as follows:

The test for determining whether a risk is unreasonable is . . . the result of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the cost of the precaution he must take to avoid the risk.

*Frelow v. St. Paul Fire & Marine Ins.*, 631 So. 2d 632, 635 (La. Ct. App. 1994).

We conclude, based upon relevant common law principles of negligence law, that proper consideration of the financial cost of preventing an injury requires that the fact-finder assess the economic cost *in conjunction with* both the *likelihood* of the risk occurring and the *degree of harm* that would result. In doing so, we note that the Industrial Commission need not employ the precise "Hand formula" in its determination. Accordingly, a fact-finder does not consider the dollar amount of preventative measures in a vacuum, for without consideration of the severity and likelihood of the risk to be prevented, the fact-finder cannot evaluate whether the expenditure would be reasonable.

In the instant case, the Industrial Commission's opinion does not reflect consideration of cost in the context of the risk of harm and the likely severity of harm. The Industrial Commission based its conclusion that NCDOT had exercised reasonable care primarily upon an extensive recitation of the general factors and circumstances pertaining to NCDOT's funding and budgetary considerations. However, nothing in the Industrial Commission's opinion indicates that the dollar amount was evaluated *in the context of the likelihood of an accident occurring at the Rowan County I-85 location and the degree of harm that might be caused by such an accident.* We emphasize that the Industrial Commission is not required to evaluate the financial cost of preventative measures in every case. However, inasmuch as the Industrial Commission's order is premised, at least in part, on this basis, the economic burden must be assessed in rela-

tion to the other factors discussed above. We conclude that the Industrial Commission erred by relying in part upon consideration of "funding limitations" and "budgetary constraints" without assessing these in connection with the likelihood of a fatal accident occurring if median barriers were not installed. Because we cannot tell the extent to which the Commission's opinion is based on this factor, the case must be remanded.

---

Finally, we conclude that the Industrial Commission failed to make findings of fact addressing issues material to its decision. "The Commission is the sole fact finding agency in cases in which it has jurisdiction . . . [S]pecific findings by the Commission with respect to the crucial facts, upon which the question of plaintiff's right to compensation depends, are required." *Morgan v. Furniture Industries, Inc.*, 2 N.C. App. 126, 127-28, 162 S.E.2d 619, 620 (1968) (citation omitted).

In *Martinez v. Western Carolina University*, 49 N.C. App. 234, 271 S.E.2d 91 (1980), the plaintiff alleged that certain State employees had negligently "fail[ed] to obtain timely and adequate examination, diagnosis and treatment of claimant's injuries." This Court held:

> [T]he issue of whether [defendants were] . . . negligent in failing to obtain timely and adequate examination, diagnosis and treatment of claimant's injuries. . . . engenders three distinct findings which must be made: (1) was there an unreasonable delay . . . (2) if so, was the delay caused by [defendants]? and (3) if so, was the delay a proximate cause of plaintiff's injury? . . . [T]he commission's finding that 'the defendant's employees . . . were guilty of no negligent conduct proximately causing damage to Martinez' is not sufficient to meet its duty to make specific findings as to each material fact upon which the rights of the parties depend.

*Id.* at 240, 242, 271 S.E.2d at 94-95.

In the instant case, the Industrial Commission's findings of fact fail to address plaintiff's central contentions—that *after* NCDOT made its initial prioritizing decisions, it was negligent not to install a median barrier during the following four years, given (1) failure of the expected funding for widening of I-85 to materialize, (2) the continued accidents in that location, (3) the demonstrated success in reducing or eliminating fatalities that was observed when I-40 got medians, and (4) the availability of funds, as evidenced by NCDOT's

installation of median barriers after the accident. Thus, the thrust of plaintiff's argument—that the *delay* was unreasonable—was not addressed in the Industrial Commission's findings of fact. Plaintiff alleged negligence in NCDOT's delay *after* it made its initial discretionary decision about when, where and on what prioritization schedule to install the barriers. The Industrial Commission's findings of fact and conclusions of law fail to address this issue.

As discussed above, there also are no findings of fact pertinent to the risk of injury as related to the presence or absence of median barriers. This is relevant to assessment of reasonable care, even absent financial considerations. The findings of fact include only one potentially relevant statement about risk: that there are "more head-on crashes on two lane roads."

———

The dissent contends the Department of Transportation cannot be held liable to plaintiff under the public duty doctrine. We note that the NCDOT has not raised this issue on appeal. Moreover, the public duty doctrine has never been applied to shield the NCDOT from acts of negligence. *See, e.g., Norman v. N.C. Dep't of Transp.*, 161 N.C. App. 211, 588 S.E.2d 42 (2003) (noting that the NCDOT may have a duty to install a stop sign if the evidence establishes that NCDOT knew or should have known that an intersection was hazardous, the breach of which duty gives rise to a cause of action under the Torts Claim Act); *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. at 101, 576 S.E.2d at 351-52 (affirming the Commission's finding that the DOT negligently failed to maintain a railroad crossing, in dereliction of its statutory duty to do so); *Phillips v. N.C. Dept. of Transportation*, 80 N.C. App. 135, 138, 341 S.E.2d 339, 341 (1986) (stating that the NCDOT's "duty to maintain the right-of-way necessarily carried with it the duty to make periodic inspections" and concluding that the NCDOT could be found negligent based on implied notice of a hazardous condition on the right-of-way). Further, the construction and maintenance of the state highway system is not an exercise of the NCDOT's "discretionary authority so conferred upon it by statute" as asserted by the dissent. *See Guyton v. Board of Transportation*, 30 N.C. App. 87, 90, 226 S.E.2d 175, 177 (1976) (holding that the defendant Board of Transportation did not abuse its authority when it excavated and removed a highway adjacent to the plaintiffs' property, where the North Carolina General Statutes specifically granted the defendant discretionary authority to take such action "when in its judgment the public good require[d] it").

We also disagree with the dissenting opinion's conclusion that this appeal must be dismissed for failure to comply with the Rules of Appellate Procedure. While the failure to comply with the appellate rules subjects an appeal to dismissal, *Steingress v. Steingress*, 350 N.C. 64, 511 S.E.2d 298 (1999), this Court may suspend or vary the requirements of the rules to "prevent manifest injustice," N.C.R. App. P. 2, or "as a matter of appellate grace." *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 288, 266 S.E.2d 812, 814 (1980). The dissenting opinion cites *Shook v. County of Buncombe*, 125 N.C. App. 284, 480 S.E.2d 706 (1997), in support of dismissal. In *Shook*, the appellant's brief presented "a number of interwoven and complicated issues, amidst a record on appeal of three volumes and seven hundred and sixty-seven (767) pages." *Id.* at 286, 480 S.E.2d at 707. The Court explained that such

> circumstances highlight why our appellate rules are a necessity. When we are presented with an appeal such as the instant one, the rules are not merely ritualistic formalisms, but are essential to our ability to ascertain the merits of an appeal. Furthermore, the appellate rules promote fairness by alerting both the Court and appellee to the specific errors appellant ascribes to the court below.

*Id.*

In this case, the dissenting opinion does not assert that the rules violations by plaintiff impede comprehension of the issues on appeal by the appellee or this Court, or that the appellate process has been otherwise frustrated. Nor does the record support such a conclusion. Unlike *Shook*, the record here is not lengthy, nor are the issues complicated. The violations are technical rather than substantive, and are not so egregious as to warrant dismissal. *See, e.g., N.C. Farm Bureau Mut. Ins. Co. v. Allen*, 146 N.C. App. 539, 542, 553 S.E.2d 420, 422 (2001) (electing to review the appellant's case on its merits, although appellant failed to reference his assignments of error on appeal); *Fletcher v. Dana Corporation*, 119 N.C. App. 491, 493-94, 459 S.E.2d 31, 33 (1995) (granting review pursuant to Rule 2, although appellants violated appellate rules by "merely cit[ing] to portions of the Commission's Opinion without setting forth a basis for error"); *Symons Corp. v. Insurance Co. of North America*, 94 N.C. App. 541, 543, 380 S.E.2d 550, 552 (1989) (stating that, "[a]lthough defendant in this case did not technically follow the rules by failing to list specific page numbers where exceptions could be found in the record and did not set out these exceptions in the brief, we do not find these omis-

sions so egregious as to invoke dismissal"). Plaintiff has presented a compelling appeal warranting reversal, the merits of which were orally argued before this Court. Dismissal of such appeal for technical appellate rules violations would amount to a manifest injustice.

In sum, the Industrial Commission failed to make adequate findings to support its conclusion that the NCDOT's actions were reasonable, erred by relying on an improperly conducted assessment of the financial cost of installing median barriers, and failed to make necessary findings of fact. Accordingly, the opinion and award of the Industrial Commission must be reversed and this matter remanded for additional findings of fact and further proceedings not inconsistent with this opinion.

Reversed.

Judge WYNN concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

I respectfully dissent from the majority's holding to reverse the Industrial Commission's opinion and award. Plaintiff failed to comply with the appellate rules of this Court. I vote to dismiss this appeal or, in the alternative, to affirm the Commission on the merits of the appeal.

### I. Standard of Review

The North Carolina Department of Transportation ("NCDOT") is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act. *Davis v. Highway Commission*, 271 N.C. 405, 156 S.E.2d 685 (1967). That Act states in part, "[t]he Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee . . . under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a) (2003).

Our Court has previously ruled on the standard of review for tort claims from the Commission. "Under the Tort Claims Act, 'when considering an appeal from the Commission, our Court is limited to two

questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.' " *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 97, 576 S.E.2d 345, 349 (2003) (quoting *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001), *cert. denied*, 355 N.C. 285, 560 S.E.2d 800 (2002)); *see* N.C. Gen. Stat. § 143-293 (2003).

## II. Preserving Issues for Appellate Review

### A. Assignments of Error

"[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a) (2003). The record reveals plaintiff's unnumbered assignments of error as follows:

The North Carolina Industrial Commission erred by disallowing the deposition testimony of Dr. Larry R. Goode (the former Secretary of Transportation and a defendant in the Viar actions); Norris Tolson (the current Secretary of Transportation); James M. Lynch (Branch Manager of the Traffic Engineering and Safety Systems Branch of the Department of Transportation and an author of the State's Across Median Accident Study) taken in *Hallum v. North Carolina Department of Transportation* (TA 15455) and *Jones v. North Carolina Department of Transportation* (TA 15601). These cases with nearly identical fact circumstances and identical legal issues pertaining to the willful refusal of the respondents to install median barriers in deadly stretches of North Carolina interstates after an acute need for the barriers had been identified by the Department of Transportation's own investigation.

Record, p. —— [sic]

The North Carolina Industrial Commission, in its majority opinion, committed reversible error by not finding the named respondents negligent in the deaths of the minor petitioners for not installing median barriers on a deadly stretch of Highway I-85 after the Department of Transportation found an acute need for the barriers approximately 8 years earlier.

Record, p. —— [sic]

Plaintiff failed to cite any pages in the record under either of his assignments of error.

On appeal, plaintiff argues the Commission's opinion and award should be reversed. We must first consider whether the Commission's findings of fact are supported by competent evidence. *Smith*, 156 N.C. App. at 97, 576 S.E.2d at 349. Our review is further limited by the North Carolina Rules of Appellate Procedure, which require the appellant to assign error as follows:

> questions that the evidence is legally or factually insufficient to support a particular issue or finding, and challenges directed against any conclusions of law of the trial court based upon such issues or findings, may be combined under a single assignment of error raising both contentions *if the record references and the argument under the point sufficiently direct the court's attention to the nature of the question* made regarding each such issue or finding or legal conclusion based thereon.

N.C.R. App. P. 10(c)(3) (2003) (emphasis supplied).

Our Supreme Court has ruled:

> [w]here no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal. Furthermore, the scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal. The Court of Appeals erred in reversing the trial court on an issue not properly presented for appeal by exception or assignment of error.

*Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991) (internal citations omitted).

Since plaintiff failed to assert error to any of the Commission's findings of fact, the Commission's findings are binding on our Court and we must conclude they are supported by competent evidence. *Id.* Plaintiff also failed to reference the record in violation of N.C.R. App. P. 10(c)(3) (2003). This Court should not address plaintiff's assignments of error, and this appeal should be dismissed. *See Shook v. County of Buncombe*, 125 N.C. App. 284, 286, 480 S.E.2d 706, 707 (1997) ("[T]he rules are not merely ritualistic formalisms, but are essential to our ability to ascertain the merits of an appeal. Furthermore, the appellate rules promote fairness by alerting both the Court and appellee to the specific errors appellant ascribes to the court below.").

B.  Plaintiff's Arguments on Appeal

In order to reach the merits of plaintiff's argument and reverse the Commission's opinion and award, this Court is limited to the issues properly presented for appeal. N.C.R. App. P. 10(a) (2003); *see Koufman*, 330 N.C. at 97-98, 408 S.E.2d at 731. In addition to the rule violations in plaintiff's assignments of error discussed above, his brief also fails to adhere to the North Carolina Rules of Appellate Procedure.

Plaintiff's brief sets forth only one "question presented" to this Court: whether the NCDOT's failure to install median barriers was a proximate cause of the death of the Viar sisters. In making his arguments, plaintiff cites "Assignment of Error No. 1" and solely cites to the pages in the record containing a dissenting opinion from the Commission's opinion and award. Citing only to the dissenting opinion violates the appellate rules and is insufficient to identify "the pages at which [the assignments of error] appear in the printed record on appeal." N.C.R. App. P. 28(b)(6) (2003).

Plaintiff's question presented and arguments on that issue do not correspond to the first assignment of error. Plaintiff's brief does not address the Commission's failure to admit certain deposition testimony from other cases as set forth as error in the first assignment of error. Although plaintiff cites "Assignment of Error No. 1" in his brief, none of his arguments relate in any manner to the substance of plaintiff's first assignment of error. Appellate "[r]eview is limited to questions so presented in the several briefs. Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." N.C.R. App. P. 28(a) (2003). Plaintiff has abandoned his first assignment of error concerning the deposition testimony from other cases.

Regarding his second assignment of error, plaintiff does not cite or refer to "Assignment of Error No. 2" in his brief. "A party may not present for the first time in an appellate brief a question raising issues of law not set out in the assignments of error contained in the record on appeal." *Branch Banking and Trust Co. v. Staples*, 120 N.C. App. 227, 231, 461 S.E.2d 921, 925, *disc. rev. denied*, 342 N.C. 190, 463 S.E.2d 233 (1995); *see Shook*, 125 N.C. App. at 286, 480 S.E.2d at 707 (appellant's failure to properly assign error on appeal is fatal and his appeal is dismissed). Plaintiff failed to cite to his second assignment of error and failed to specify or argue any error in any conclusions of law within the Commission's opinion and award. Not only did plain-

tiff improperly make assignments of error, but he also failed to properly argue the portions assigned as error. This appeal is not properly before us and should be dismissed.

### III. Negligence

Since the majority's opinion reaches the merits of this appeal, I also dissent from the result reached in that opinion.

### A. Standard of Review

Our Supreme Court has explained the role of appellate courts in cases appealed from the North Carolina Industrial Commission. The Court ruled, "on appeal, an appellate court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (citation omitted). Plaintiff did not take exception to any findings of fact, thus limiting our review solely to a question of "whether the Commission's findings of fact justify its conclusions of law and decision." *Fennell*, 145 N.C. App. at 589, 551 S.E.2d at 490 (citation omitted).

After concluding that "[t]here was no negligence on the part of any named Officer, voluntary servant or agent of the State . . . which proximately caused plaintiffs['] injuries," the Commission applied N.C. Gen. Stat. § 143-291 (2003).

> Under [N.C. Gen. Stat. § 143-291], "negligence is determined by the same rules as those applicable to private parties." Plaintiff must show that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury."

*Woolard v. N.C. Dept. of Transportation*, 93 N.C. App. 214, 217, 377 S.E.2d 267, 269, *cert. denied*, 325 N.C. 230, 381 S.E.2d 782 (1989) (quoting *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988)). I agree with the Commission's conclusion that plaintiff failed to prove the NCDOT breached its duty or that any purported breach of duty by the NCDOT proximately caused the deaths of the Viar sisters.

### B.  Findings of Fact

The majority's opinion concludes the Commission failed to make adequate findings of fact. Specifically, the majority's opinion suggests several "findings" the Commission should have included to "provide some appropriate context" such as, the NCDOT's annual budget, funding availability, and the degree of harm caused by median accidents. I disagree. As further explained below, I would conclude the Commission's findings adequately support its conclusion that the NCDOT did not negligently cause the death of the Viar sisters.

Additionally, under the Tort Claims Act,

> the burden of proof as to this [negligence] issue was on the plaintiff. Evidence is usually not required in order to establish and justify a finding that a party has failed to prove that which he affirmatively asserts. It usually occurs and is based on the absence or lack of evidence.

*Bailey v. Dept. of Mental Health*, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968). Here, the Commission concluded that plaintiff failed to prove negligence by the NCDOT. Following *Bailey*, the majority's opinion's criticism of the lack of findings resulted from plaintiff's failure to meet his burden to prove negligence.

### C.  Public Duty Doctrine

In its answer to plaintiff's affidavit and claim for damages, the NCDOT asserted the public duty doctrine as a defense. The issue was also raised and argued during oral arguments before this Court. Our Supreme Court has held that the public duty doctrine applies to causes of action under the Tort Claims Act:

> The general common law rule provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have no duty to protect specific individuals. *Because the governmental entity owes no particular duty to any individual claimant, it cannot be held liable for negligence for a failure to carry out its statutory duties. Absent a duty, there can be no liability.*

*Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998) (internal citations omitted) (emphasis supplied).

The NCDOT possesses the statutory authority to plan, design, locate, construct, and maintain the system of public highways in this

State. N.C. Gen. Stat. § 143B-346 (2003); *Equipment Co. v. Hertz Corp.*, 256 N.C. 277, 123 S.E.2d 802 (1962).

> The [NCDOT] is vested with broad discretion in carrying out its duties and responsibilities with respect to the design and construction of our public highways. The policies of the Board of Transportation and the Department of Transportation and the myriad discretionary decisions made by them as to design and construction are not reviewable by the judiciary "unless [their] action is so clearly unreasonable as to amount to oppressive and manifest abuse."

*Hochheiser v. N.C. Dept. of Transportation*, 82 N.C. App. 712, 717-18, 348 S.E.2d 140, 143 (1986), *aff'd*, 321 N.C. 117, 361 S.E.2d 562 (1987) (quoting *Guyton v. North Carolina Board of Transp.*, 30 N.C. App. 87, 90, 226 S.E.2d 175, 177 (1976)).

In deciding whether to install median barriers along certain portions of our state highway and interstate system, the NCDOT must use its discretion, is limited by budget considerations, and must economically coordinate construction projects. Here, the Commission reviewed the NCDOT's decision and the actions taken by the NCDOT to make the portion of Interstate 85 where the accident occurred safer. The Commission concluded the NCDOT's actions were reasonable. The Commission's findings of fact, unchallenged by plaintiff, support this conclusion. Specifically, the Commission found as fact:

16. The task force preparing the [Interstate Across Median Accident Survey] recommended corrective action be delayed [on this stretch of I-85 where this accident occurred] until other projects were constructed unless additional accidents required earlier action because this project was within the physical limits of construction of other projects and because of financial restrictions. Therefore, construction was scheduled late in the programmed seven-year (7) period.

17. In September 1993, it was anticipated that the widening of I-85, including the area in question, would occur within seven (7) years or by 1999.

18. The North Carolina Department of Transportation could not fund and build all twenty-four (24) sites immediately. Decisions were made to install a median barrier at this site and others at the time when future work was done

VIAR v. N.C. DEP'T OF TRANSP.

[162 N.C. App. 362 (2004)]

rather than to install something and have to remove it with the expansion.

. . . .

20. Based upon the 1989 and 1996 versions of the American Association of State Highway and Transportation Roadside Design Guide, the 30[-foot] median fell into the category in which *median barriers for new construction were optional regardless of traffic volume. The guide only requires the need for a barrier be evaluated using the best engineering judgment.* (emphasis supplied).

21. Ellis King [plaintiff's expert witness] did not testify the highway failed to meet standards at the time of construction and admitted that the 30-foot median fell into the optional area of the chart of the Roadway Design Guide upon which he relied in this testimony. Dr. King did not know if the funds were available or what other projects may have been competing for funding. Dr. King indicated a guardrail would not have prevented the initial impact on the other southbound vehicle and that a barrier would have put the Viar vehicle in the path of another southbound vehicle.

. . . .

27. Other projects may be more deserving of immediate attention than the stretch of I-85 in question.

. . . .

31. Funding for the barriers had been allocated in the Transportation Improvement program which covers seven (7) years.

. . . .

34. Expected funding for this widening project did not become available.

. . . .

50. Requests for improvements are referred to the Policy and Programming Group of the North Carolina Department of Transportation under the transportation improvement program. This program has been in place since the 1970s.

51. It is normal that many more requests for improvements are made than there is money to underwrite the requests.

The Commission further found that the section of Interstate 85 where the accident occurred was constructed in the 1950s and that there are no federal guidelines or state regulations requiring periodical review to determine if the median barrier will be required. While no legal authority or engineering guidelines required bringing an older facility up to a new standard or to modify it due to traffic increases, the NCDOT sought to make this portion of Interstate 85 safer by reducing the speed limit from sixty-five miles per hour to fifty-five miles per hour prior to the accident.

The NCDOT did not owe a specific duty to plaintiff and cannot be held liable under the public duty doctrine where the Commission concluded it acted reasonably and within its statutory and discretionary authority.

### D. Proximate Cause

In addition to failing to prove the NCDOT owed a specific duty or that it breached any duty, plaintiff has not shown that the NCDOT's failure to erect median barriers proximately caused the death of the Viar sisters.

Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Woolard*, 93 N.C. App. at 218, 377 S.E.2d at 270 (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)). The evidence shows the accident occurred at night, around 9:00 p.m., and during "extremely heavy rain." The Viar vehicle was traveling south on Interstate 85, when it crossed the center median and collided with a large truck traveling in the northbound lane. Plaintiff offered no evidence tending to show that the Viar sisters could or would have survived the accident had median barriers been in place. Dr. Ellis King, plaintiff's own witness, was qualified as an expert in traffic safety and testified that: (1) guardrails do not always stop vehicles; (2) a barrier could have put the Viar vehicle

back into the path of another southbound vehicle; and (3) interstates without median barriers are still safer than two-lane roads.

Competent evidence presented before the Commission supports its findings of fact and conclusions of law. Presuming plaintiff had successfully shown that the NCDOT owed plaintiff an individualized duty and breached that duty, the Commission correctly concluded that the NCDOT's failure to erect median barriers was not a proximate cause of the death of the Viar sisters.

## IV. Conclusion

Plaintiff failed to except to any of the Commission's findings of fact or conclusions of law. These findings are binding upon this Court on appeal. Plaintiff also failed to properly assign error or argue its assignments of error contained in the record in violation of the North Carolina Rules of Appellate Procedure. "Our rules are mandatory, and in fairness to all who come before this Court, they must be enforced uniformly." *Shook*, 125 N.C. App. at 287, 480 S.E.2d at 708. Our Courts have long recognized a strict requirement that appeals should be dismissed for "failure to comply with the rules." *Pruitt v. Wood*, 199 N.C. 788, 792, 156 S.E. 126, 128 (1930); *see In re Lancaster*, 290 N.C. 410, 424, 226 S.E.2d 371, 380 (1976) ("Ordinarily our legal system operates in an adversary mode. One incident of this mode is that only those who properly appeal from the judgment of the trial divisions can get relief in the appellate divisions. This can be a strict requirement."). I dissent from the majority's opinion and vote to dismiss this appeal.

Despite plaintiff's multiple and egregious rule violations, the majority's opinion ignores all violations and reaches the merits of this appeal. The deaths of these two young sisters and the serious injuries to the surviving sister are tragic and engender great sympathy for the family. However, considering our standard of review and the Commission's findings of fact that are binding upon this Court, I vote to affirm the Commission's opinion and award on the merits of the appeal. I respectfully dissent.