EMMA CARSON POPE, BY AND THROUGH HER GUARDIANS AD LITEM; JIMMY M. POPE AND
JEANNIE B. POPE; JIMMY M. POPE, INDIVIDUALLY; AND JEANNIE B. POPE, INDIVIDU-
ALLY, PLAINTIFFS v. CUMBERLAND COUNTY HOSPITAL SYSTEM, INC. FORMERLY
CUMBERLAND COUNTY HOSPITAL AUTHORITY, INC., D/B/A CAPE FEAR VALLEY MEDICAL
CENTER; LINDA T. McALISTER, M.D., P.A. AND LINDA T. McALISTER, M.D.,
INDIVIDUALLY, DEFENDANTS

No. COA04-1273

(Filed 19 July 2005)

**1. Medical Malpractice— labor and delivery nurses—failure
to report bleeding**

The trial court erred by entering a directed verdict for defend-
ant hospital on a negligence claim involving labor and delivery
nurses where plaintiffs presented evidence that the failure of
neonatal nurse practitioners to give a blood transfusion during
resuscitation was a foreseeable result of the failure of the labor
and delivery nurses to report their observations of bleeding.

**2. Appeal and Error— cross-assignment of error—admissibil-
ity of expert testimony**

The admissibility of expert testimony in a medical mal-
practice action was not an alternative basis in law supporting
a directed verdict, and was not the proper subject of a cross-
assignment of error.

Appeal by plaintiffs from order entered 15 March 2004 by Judge
Ola M. Lewis in Cumberland County Superior Court. Heard in the
Court of Appeals 11 May 2005.

*Anderson, Daniel & Coxe, by Bradley A. Coxe, for plaintiffs-
appellants.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P. by Mark E.
Anderson and Kathrine E. Downing, for defendant-appellee.*

ELMORE, Judge.

Plaintiff Jeannie Pope was admitted to the Cape Fear Valley
Medical Center (CFVMC) in Fayetteville, North Carolina for induction
of labor on 2 February 1999. At approximately 4:20 a.m. on 3 February
1999, Dr. Linda McAlister examined the status of Ms. Pope's cervix.
Dr. McAlister determined that she would rupture the membranes in
order to expedite delivery and then immediately insert a fetal scalp

electrode to monitor the fetal heart rate more accurately. At 4:24 a.m Dr. McAlister artificially ruptured Ms. Pope's membranes. In preparation for the attachment of the fetal scalp electrode, Nurse McLaurin, a labor and delivery nurse, disconnected the external monitor which was recording the heart rate. Dr. McAlister first attempted to insert the electrode at 4:25 a.m., and then a second time, but could not get a consistent reading. Dr. McAlister made a third attempt at 4:31 a.m. and at that time observed blood on her glove as she withdrew her finger from the cervix. The reading of the fetal scalp electrode indicated that the fetal heart rate had crashed, a condition known as bradycardia. Dr. McAlister ordered an emergency Cesarean section delivery. While Dr. McAlister was absent from the room preparing for the procedure, the bleeding from Ms. Pope's uterus intensified.

When plaintiff Emma Pope was born at approximately 4:44 a.m., she was pale and had no heartbeat. A team of neonatal nurse practitioners (NNPs) attempted to resuscitate Emma but did not administer a blood transfusion. Dr. Gallagher, a neonatologist, arrived fifteen minutes after the birth to examine the placenta and consult with Dr. McAlister. Dr. Gallagher then ordered that an emergency blood transfusion take place, and Emma received the transfusions at 5:21 and 5:25 a.m. But, as a result of the fetal bleeding which occurred prior to the blood transfusions, Emma sustained irreversible brain damage.

Plaintiffs filed an action in Cumberland County Superior Court against Cumberland County Hospital System (defendant Hospital) and Dr. Linda McAlister. Plaintiffs' *respondeat superior* claims against defendant Hospital were based upon the care provided by the labor and delivery nurses and by the NNPs on the resuscitation team. The trial began on 23 June 2003. At the close of plaintiffs' evidence, both defendants moved for directed verdicts. The trial court orally granted the motions as follows: a directed verdict in favor of Dr. Linda McAlister on all claims; and a directed verdict in favor of defendant Hospital with respect to the care rendered by the labor and delivery nurses. Thus, the only issue submitted to the jury was the alleged negligence by the neonatal nurses. The jury could not reach a unanimous verdict, and the court declared a mistrial on 9 August 2003.

The trial court entered written orders on 9 October and 14 October 2003 which, respectively, granted a directed verdict on the labor and delivery claims and granted a directed verdict on all claims against Dr. Linda McAlister. Plaintiffs subsequently settled their

appeal against Dr. McAlister. Thereafter, in an order filed 15 March 2004, the trial court denied plaintiffs' motion for relief from judgment and affirmed the 9 October order granting defendant's motion for directed verdict on the claims relating to the labor and delivery nurses. Plaintiffs appeal.

Plaintiffs assign error to the trial court's entry of directed verdict, arguing that there was sufficient evidence presented at trial to defeat defendant's motion for a directed verdict with respect to the labor and delivery care. "When a defendant moves for a directed verdict in a medical malpractice case, the question raised is whether plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages." *Felts v. Liberty Emergency Service*, 97 N.C. App. 381, 383, 388 S.E.2d 619, 620 (1990) (internal quotation omitted). A directed verdict is rarely appropriate in a negligence case involving the application of a standard of care. *See Leatherwood v. Ehlinger*, 151 N.C. App. 15, 19, 564 S.E.2d 883, 886 (2002) (the issue of whether the defendant breached the standard of care is ordinarily a factual question for the jury; directed verdict in negligence cases is seldom appropriate), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 368 (2003).

I.

[1] Defendant contends that this Court should affirm the directed verdict on the basis that plaintiffs failed to establish proximate causation. In particular, defendant argues that the failure of the NNPs on the resuscitation team to immediately order and infuse blood into Emma Pope when she did not respond to resuscitation efforts was an intervening cause of her injuries.

As "causation is an inference of fact to be drawn from the circumstances," proximate cause is ordinarily a jury question. *Taylor v. Interim Healthcare of Raleigh-Durham, Inc.*, 154 N.C. App. 349, 353, 574 S.E.2d 11, 14 (2002), *disc. review denied*, 356 N.C. 695, 579 S.E.2d 102 (2003); *see also Leatherwood*, 151 N.C. App. at 24, 564 S.E.2d at 889. North Carolina defines intervening cause as "an independent force which entirely supercedes the original action and renders its effect in the chain of causation remote." *Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984). Thus, "in order for the conduct of the intervening agent to break the sequence of events . . . the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it." *Id.*

Plaintiffs argue that the evidence supports two theories of a breach of the standard of care by the labor and delivery nurses and that each breach was a proximate cause of Emma Pope's injuries.[1] Plaintiffs introduced the deposition testimony of Dr. McAlister, and this testimony was read into the record. Dr. McAlister testified that Nurse McLaurin was present in the room throughout the fetal scalp electrode attempts which resulted in the bleeding and the call for an emergency C-section. Dr. McAlister further testified that she relied upon the labor and delivery nurses to advise the NNPs that there had been a bleeding episode. Plaintiffs also introduced Nurse McLaurin's deposition testimony, which revealed that she was present in the room during the resuscitation efforts of the NNPs and that she did not at any point inform them of the bleeding. Plaintiffs' expert witness Dr. Dillard testified that Nurse McLaurin breached the standard of care by failing to communicate the information to the resuscitation team. He stated that blood could have been available within five minutes of being ordered and that, had the NNPs been aware of the nature of the bleeding, they would have ordered blood immediately. Dr. Dillard further testified that the failure to have blood available and to give it immediately after the birth was the proximate cause of Emma's brain damage.

Defendant argues that the following testimony by Dr. Dillard demonstrates that the conduct of the neonatal nurses was an intervening cause:

Q: Dr. Dillard, do you have an opinion to a reasonable degree of medical certainty, if the jury finds from the facts in its greater weight [that the NNPs were not given the information about the bleeding] . . . as to whether or not they breached the standard of care in the way they resuscitated this baby even if they were completely in the dark?

A: Yes, because once they realized the baby was not responding to the resuscitation and was pale, they had to assume that the pallor, the pale color, was from blood loss. At that point they would have asked for blood and then immediately given . . . 20 milliliters per kilogram or 60 milliliters of normal saline while waiting for the blood to get from the blood bank. Typically in a hospital such as this, one can run to the blood bank, sign out the blood, get

---

1. Since the evidence of one of the two theories of negligence was sufficient to support an inference of causation, we do not address the evidence of plaintiffs' second theory.

back up, and have it available to give within five minutes. So from 4:47 to 4:52 they could have been giving more volume, having realized that the baby had lost a lot of blood, and then by 4:52, they could have been giving blood.

. . . .

Q: All right, so in other words, this is your opinion that reasonable [NNPs] . . . should have recognized by 4:47, this baby needs blood and ordered it?

A: Given the lack of response to the resuscitation over a three-minute period with intubation, chest compressions, and a baby who remained pale, that's—that would have been good evidence for the need to get blood.

However, we must review the evidence in the light most favorable to plaintiffs and deny the motion for directed verdict if there is more than a scintilla of evidence to support each element of plaintiffs' claim. *See Taylor*, 154 N.C. App. at 353, 574 S.E.2d at 14; *Williamson v. Liptzin*, 141 N.C. App. 1, 9-10, 539 S.E.2d 313, 318-19 (2000), *disc. review denied*, 353 N.C. 456, 548 S.E.2d 734 (2001). Moreover, "except in cases so clear that there can be no two opinions among fair-minded people . . . [the jury should] determine whether the intervening act and the resultant injury were such that the original wrongdoer could reasonably have expected them to occur as a result of his own negligence." *Barber v. Constien*, 130 N.C. App. 380, 388-89, 502 S.E.2d 912, 917-18 (internal quotation omitted), *disc. review denied*, 349 N.C. 227, 515 S.E.2d 699 (1998).

Here, plaintiffs presented evidence that the actions of the NNPs were a foreseeable result of the failure of the labor and delivery nurses to report their observations of bleeding associated with the fetal distress. Dr. Dillard testified that the way the resuscitation was conducted indicated that the NNPs had no idea that the baby had lost blood; he stated that if the NNPs had the information of the significant bleeding, that the standard of care required them to order blood for the baby. Defendant has not shown that, as a matter of law, the actions of the NNPs were an independent force which superceded the alleged negligence of the labor and delivery nurses. Plaintiffs' evidence was sufficient to create an inference of causation for the jury, and the trial court erred in entering directed verdict on the negligence claims relating to defendant's labor and delivery nurses.

**POPE v. CUMBERLAND CTY. HOSP. SYS., INC.**

[171 N.C. App. 748 (2005)]

## II.

**[2]** Defendant sets forth several cross-assignments of error, arguing that the trial court erred in admitting testimony by plaintiffs' experts Dr. Ross and Dr. Dillard on the standard of care for labor and delivery nurses at CFVMC. Defendant contends that it is entitled to a directed verdict on this basis because there were no other expert witnesses to establish negligence by the labor and delivery nurses. However, in reviewing a trial court's order granting a motion for directed verdict, this Court must consider both admissible evidence and inadmissible evidence improperly admitted over the objection of the opposing party. *See Haney v. Alexander*, 71 N.C. App. 731, 733-34, 323 S.E.2d 430, 432 (1984), *cert. denied*, 313 N.C. 329, 327 S.E.2d 889 (1985). As the inadmissibility of plaintiffs' expert testimony is not *an alternative basis in law* to support the directed verdict, this argument is not the proper subject of a cross-assignment of error. *See* N.C.R. App. P. 10(d) (appellee may cross-assign as error only those actions or omissions of the trial court which "deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal was taken"); *see also Welling v. Walker*, 117 N.C. App. 445, 449, 451 S.E.2d 329, 332 (1994) (where evidentiary argument does not provide an alternative basis in law to support the judgment, appellee may not cross-assign error), *disc. review allowed*, 339 N.C. 742, 454 S.E.2d 663, *and review dismissed as improvidently granted*, 342 N.C. 411, 464 S.E.2d 43 (1995).

## III.

Plaintiffs have presented evidence sufficient to defeat a motion for a directed verdict on their negligence claims with respect to defendant's labor and delivery nurses. We, therefore, reverse the orders of the trial court granting a directed verdict to defendant Hospital on the labor and delivery claims.

Reversed.

Judges McGEE and CALABRIA concur.