GENE OUTERBRIDGE, EMPLOYEE, PLAINTIFF v. PERDUE FARMS, INC., EMPLOYER, SELF-INSURED (CRAWFORD & COMPANY, SERVICING AGENT), DEFENDANT

No. COA06-33

(Filed 2 January 2007)

**1. Workers' Compensation— findings—wage earning capacity not addressed—error**

The Industrial Commission's findings were not sufficient to support its conclusion that a workers' compensation plaintiff was limited to his impairment rating benefits (and not continued dis-

ability) after he was determined capable of sedentary work. The Commission did not address plaintiff's wage earning capacity.

## 2. Appeal and Error— cross-assignments of error—not for affirmative relief

Defendant's argument was not the proper subject of a cross-assignment of error, and was not preserved for appellate review, where defendant argued that an award of temporary disability should be reversed because it was not supported by competent evidence. Defendant was thus seeking affirmative relief rather than arguing an alternative basis for supporting the judgment.

Judge LEVINSON concurring in part and dissenting in part.

Appeal by Plaintiff from Opinion and Award entered 9 September 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 August 2006.

*Curtis C. Coleman, III, for Plaintiff-Appellant.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Brian M. Freedman, for Defendant-Appellee.*

STEPHENS, Judge.

Gene Outerbridge ("Plaintiff") appeals from an Opinion and Award of the North Carolina Industrial Commission ("Commission") that awarded him benefits for temporary total disability from 15 May 2000 through 29 November 2000 and permanent partial impairment for a five percent rating to his back. For the reasons stated herein, we remand this case to the Commission for additional findings.

Plaintiff was employed by Perdue Farms ("Defendant") on 15 May 2000 when he slipped and fell at work, injuring his back. Initially, Defendant accepted Plaintiff's claim for workers' compensation benefits as compensable and continued Plaintiff's salary from 15 May 2000 to 29 November 2000. Following Defendant's refusal to pay additional benefits, a hearing was conducted before a deputy commissioner, who issued an Opinion and Award awarding Plaintiff compensation for a five percent permanent impairment rating to his back and denying Plaintiff's claim for other benefits. Plaintiff appealed to the Full Commission, which issued an Opinion and Award on 9 September 2005, awarding Plaintiff temporary total disability benefits for the same period of time that his salary was continued and com-

pensation for a five percent permanent partial impairment of his back. Plaintiff appeals.

[1] By his first assignment of error, Plaintiff argues that the Commission erred by failing to make findings of fact as to whether he sustained a loss of wage-earning capacity after finding that he had suffered a permanent injury. We agree.

Specifically, Plaintiff's appeal challenges the Full Commission's failure to determine all the material facts arising from the evidence on the extent of Plaintiff's *disability*. Plaintiff described the disability issues in detail in the Industrial Commission Form 44 Application for Review filed with the Full Commission in connection with his appeal from the decision of the deputy commissioner. Plaintiff included multiple references to the evidence which he believed supported his contention that he was disabled and detailed his contentions regarding the lack of evidence to support a contrary determination. The uncontradicted evidence on which Plaintiff relied to support his contentions established the following:

At the time of the hearing, Plaintiff was forty-seven years old with a date of birth of 30 October 1955. He finished the tenth grade of high school. For the first fourteen years of his sixteen total years of employment with Defendant, his job was to work on machinery, "taking out motors, putting motors in, and rebuilding machines[.]" At the time of his injury, he had worked for two years as a "hands-on foreman[,]" a job which included regularly lifting fifteen to twenty pounds and, "sometimes[,]" fifty pounds. This job was performed mostly standing and also required stair-climbing. Plaintiff last performed this job on the day of his back injury, 15 May 2000. In Plaintiff's opinion, he is no longer able to do this job because of the lifting, standing and "going up and down steps" it requires. According to Plaintiff, the job is not sedentary in nature.

Plaintiff has not worked since he was released from the care of Dr. Ira Hardy, his treating neurosurgeon, on 29 November 2000. Upon releasing him, Dr. Hardy restricted Plaintiff to permanent sedentary work as defined by the Dictionary of Occupational Titles:

[e]xerting up to 10 pounds of force occasionally (. . .up to 1/3 of the time) and/or a negligible amount of force frequently (. . .1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time[.]

The report of the Functional Capacity Evaluation administered to Plaintiff at Dr. Hardy's request on 22 September 2000 characterized Plaintiff's foreman job with Defendant as "medium" in its physical requirements. To Plaintiff's knowledge, the only jobs with Defendant that would be within the sedentary work restrictions imposed by Dr. Hardy are the jobs in the front office of the plant, such as "[s]ecretarial work, answering the phone or taking a message or something like that." Plaintiff testified that Defendant has not offered him a job since Dr. Hardy released him.

The three jobs which Defendant did offer Plaintiff were offered "immediately after" Plaintiff's injury, before he came under the care of Dr. Hardy. In the opinion of Dr. Britt and Dr. Alexander, who were treating Plaintiff at the time, those jobs were within the modified duty work restrictions they had imposed. Specifically, Dr. Alexander testified that all three jobs would permit Plaintiff to "walk, sit, or stand as desired for comfort." When asked if the jobs had been offered to Plaintiff again after he was released by Dr. Hardy, Plaintiff's supervisor replied, "Not that I'm aware of."

The only effort Plaintiff has made to find work elsewhere since he was released by Dr. Hardy was to go to two grocery stores looking for work as a bag boy. He did not fill out applications for any job at either store. Plaintiff testified that he has "asked people" for employment, but that prospective employers have "refuse[d]" to give him an application when he tells them about the medications he takes for his pain.

From the evidence before it and in the face of the disability issues raised by Plaintiff, the Full Commission determined, *inter alia*, the following:

At the time of his injury on 15 May 2000, Plaintiff had been working for Defendant for about two years performing "various manual tasks for operating the equipment" which required lifting fifteen to twenty pounds and, occasionally, fifty pounds.

The Full Commission also determined that Dr. Keith Britt, the on-site physician to whom Defendant referred Plaintiff for treatment of his injury, released him to perform "modified duty with restrictions of no bending, twisting, or lifting over 5 pounds[.]" These restrictions were in place until 25 May 2000, when Dr. Britt revised the restrictions to further limit Plaintiff's work capacity to *no* lifting, as well as no bending and twisting.

Dr. Britt referred Plaintiff to Dr. James Alexander. Plaintiff saw. this doctor on 31 May 2000, at which time he took Plaintiff out of work. On 6 June 2000, Dr. Alexander released Plaintiff to perform modified duty work "with instructions that he be permitted to walk, sit, or stand as desired for comfort." Dr. Alexander continued these restrictions when he last saw Plaintiff. on 24 July 2000. Dr. Alexander further recommended that Plaintiff see Dr. Hardy. At no time did Dr. Alexander determine that Plaintiff was totally disabled from working.

On 31 July 2000, Plaintiff came under the care of Dr. Hardy who took him out of work "so that he could properly evaluate the plaintiff's condition." Following the performance of various diagnostic studies, Dr. Hardy determined, on 29 November 2000, that Plaintiff had reached maximum medical improvement. He released Plaintiff from care "and restricted him to sedentary work." He also assigned a five percent permanent impairment rating to Plaintiff's back.

Despite specifically finding that from 15 May through 25 May 2000, Plaintiff "refused to perform the work [Defendant] offered him" within the modified duty restrictions that had been imposed by Dr. Britt, and that as of 24 July 2000, Plaintiff "continued his refusal to return to suitable work which was offered to him by the employer" in accordance with the modified duty restrictions placed by Dr. Alexander, the Commission ultimately found that Plaintiff was totally unable to work from the date of his injury on 15 May until Dr. Hardy released him from care on 29 November 2000.

The Commission also found that after 29 November 2000, Plaintiff was "capable of sedentary work, as recommended by his treating physicians." The Commission then concluded that Plaintiff was entitled to temporary total disability benefits from 15 May through 29 November 2000 under N.C. Gen. Stat. § 97-29, and was limited to benefits thereafter under N.C. Gen. Stat. § 97-31 based on the five percent impairment rating.

Plaintiff argues that the Commission's findings of fact, as described above, are insufficient to resolve the disability issues raised by the uncontradicted evidence. We agree that the Commission failed to make sufficient factual determinations of the *extent* of Plaintiff's *disability* after 29 November 2000.

North Carolina workers' compensation disability law is so well established that it hardly bears repeating. The Workers' Compen-

sation Act defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). At least since the decisions of our Supreme Court in *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E.2d 336 (1986), and *Gupton v. Builders Transport*, 320 N.C. 38, 357 S.E.2d 674 (1987), it has been the law of North Carolina that an employee who is able to prove a loss of wage-earning capacity, whether total or partial, "may elect to seek benefits under whichever statutory section will provide the more favorable remedy." *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 11, 562 S.E.2d 434, 442 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003). This is true even when the employee has reached maximum medical improvement and been assigned a permanent partial impairment rating. *Id.* at 14, 562 S.E.2d at 443 ("[T]he concept of MMI does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits once the employee has established a loss of wage-earning capacity pursuant to N.C. Gen. Stat. § 97-29 or § 97-30"); *see also Hooker v. Stokes-Reynolds Hosp.*, 161 N.C. App. 111, 115, 587 S.E.2d 440, 444 (2003), *disc. review denied*, 358 N.C. 234, 594 S.E.2d 192 (2004). Plaintiff bears the burden of proving the extent of his disability and, in the absence of an Industrial Commission award of disability benefits or a Form 21 or 26 agreement approved by the Commission, does not enjoy the benefit of a presumption of disability. *See, e.g., Ramsey v. Southern Indus. Constructors, Inc.*, 178 N.C. App. 25, 630 S.E.2d 681 (2006) (citing *Cialino v. Wal-Mart Stores*, 156 N.C. App. 463, 577 S.E.2d 345 (2003)). To prove entitlement to disability benefits, Plaintiff must establish either that he is unable because of his injury to earn the same wages in the same employment, or that he is unable because of his injury to earn the same wages in other employment. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E.2d 682 (1982). It is well settled that an injured worker can meet this burden in one of four ways:

(1) the production of medical evidence that, as a consequence of the work-related injury, he is physically or mentally incapable of work in any employment;

(2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment;

(3) the production of evidence that he is capable of some work, but that it would be futile to seek employment because of

preexisting conditions, *i.e.*, age, inexperience, and/or lack of education; or

> (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to his injury.

*Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993); *see also Hooker v. Stokes-Reynolds Hosp., supra.*

It is equally well settled that where the Commission's findings of fact are insufficient to determine the rights of the parties, the decision may be remanded to the Commission for additional findings of fact. *See, e.g., Priddy v. Cone Mills Corp.*, 58 N.C. App. 720, 294 S.E.2d 743 (1982). "Although the Industrial Commission is free to accept or reject any or all of plaintiff's evidence in making its award, it must make specific findings as to the facts upon which a compensation claim is based, including the extent of a claimant's disability." *Id.* at 723, 294 S.E.2d at 745; *see also Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 707, 599 S.E.2d 508, 512-13 (2004) ("Because the burden remained on plaintiff to prove his disability, the Commission was obligated to make specific findings regarding the existence and extent of any disability suffered by plaintiff").

In this case, aside from recitation of the medical evidence, the sole findings of fact the Commission made on the disability issues raised by Plaintiff were (1) Plaintiff "has not held or sought any employment" since his 15 May 2000 injury, and (2) as of 29 November 2000, Plaintiff "has been capable of sedentary work[.]" On these findings, the Commission concluded that Plaintiff was entitled to temporary total disability benefits from 15 May through 29 November 2000 and, thereafter, he was entitled to benefits only for the five percent permanent impairment rating.

By this decision, the Commission determined the *existence* of Plaintiff's disability: that his work capacity since 29 November 2000 is *sedentary*. But, it did not determine the *extent* of Plaintiff's disability because it failed to address whether, being capable of sedentary work only, Plaintiff is capable or incapable of earning the same wages he was earning at the time of his injury either in his same employment, or in other employment. Simply put, having determined that Plaintiff's work capacity is now sedentary, the Commission must address and resolve the effect of that work capacity on Plaintiff's wage-earning capacity, in the same employment or in other employment, with Plaintiff having the burden under *Hilliard* and *Russell* of

proving loss of wage-earning capacity. Since the Commission failed to make these factual determinations, its findings of fact are insufficient to support its conclusion that after 29 November 2000, Plaintiff is limited to benefits for his impairment rating. While we do not believe the evidence compels a determination that Plaintiff proved entitlement to disability benefits in lieu of benefits for the impairment rating, "the court cannot decide whether the conclusions of law and the decision of the Industrial Commission rightly recognize and effectively enforce the rights of the parties . . . if the Industrial Commission fails to make specific findings as to each material fact upon which those rights depend." *Thomason v. Red-Bird Cab Co.*, 235 N.C. 602, 606, 70 S.E.2d 706, 709 (1952). We thus remand this case to the Commission for additional findings as to each material fact regarding the extent of Plaintiff's disability.

[2] We next address Defendant's cross-assignment of error to the Commission's conclusion that Plaintiff was entitled to temporary total disability benefits for the period of 15 May 2000 through 29 November 2000. We conclude that this issue was not properly preserved for appellate review.

Rule 10 of the North Carolina Rules of Appellate Procedure provides, in pertinent part, that "an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 10(d). Our Supreme Court "has recognized that allowing cross-assignments of error 'provides protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based.' " *State v. Wise*, 326 N.C. 421, 428, 390 S.E.2d 142, 146-47, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990) (quoting *Carawan v. Tate*, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982)). However, if the issue raised "is not an alternative basis in law to support the [Commission's Opinion and Award,] this argument is not the proper subject of a cross-assignment of error." *Pope v. Cumberland County Hosp. Sys., Inc.*, 171 N.C. App. 748, 753, 615 S.E.2d 715, 719 (2005).

In the case *sub judice*, Defendant argues that the award of temporary total disability benefits for 15 May 2000 to 29 November 2000

should be reversed because it is not supported by competent evidence and is contrary to law. Thus, Defendant is seeking affirmative relief in this Court rather than arguing an alternative basis in law for supporting the judgment, and is therefore not entitled to cross-assign error in its appellee's brief. *See Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 739, 407 S.E.2d 819, 826 (1991). Defendant should have filed an appellant's brief to properly raise these issues. *See id.*

In conclusion, we dismiss Defendant's cross-assignment of error and remand this case to the Commission for entry of an Opinion and Award consistent with this opinion.

Remanded.

Judge STEELMAN concurs.

Judge LEVINSON concurs in part and dissents in part.

The judges submitted this opinion for filing prior to 31 December 2006.

LEVINSON, Judge concurring in part and dissenting in part.

I concur in the majority's conclusion that defendant seeks affirmative relief in this Court rather than arguing an alternative basis in law for supporting the judgment, and that defendant is not entitled to cross-assign the error identified. I otherwise dissent from the majority opinion because it addresses issues not preserved for appeal. I write separately to address the error articulated by plaintiff.

Under N.C.R. App. P. 28(a), "[t]he function of all briefs . . . is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs. Questions raised by assignments of error [not set out in the appellant's·brief] are deemed abandoned." Rule 28 also requires that "[e]ach question shall be separately stated. Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." Rule 28(6).

In the instant case, plaintiff's appellate argument references only assignment of error number one. Accordingly, assignment of error

number two is deemed abandoned. Assignment of error number one states that:

> The Full Commission made no findings of fact regarding whether or not the Plaintiff's permanent injury affected his wage earning capacity and consequently erred by concluding that Plaintiff was only entitled to compensation for a 5% disability to his back.

The word "only" within the phrase "only entitled to compensation for a 5% disability to his back" refers to the Commission's determination that plaintiff had a five percent, rather than seven percent, impairment to his back. The word cannot refer generally to the Commission's award because, inasmuch as the Commission awarded plaintiff temporary total disability for the period between 15 May 2000 and 30 November 2000, it clearly did not "only" award benefits under N.C. Gen. Stat. § 97-31 (2005). Accordingly, this assignment of error challenges the Commission's award of compensation for a five percent permanent impairment to his back, pursuant to G.S. § 97-31.

Moreover, plaintiff did not assign error to the Commission's determination that his period of temporary disability ended on 30 November 2000. Nor did plaintiff assign error to the Commission's failure to make sufficient findings of fact to support its conclusion that he was not entitled to temporary total disability after that date. I conclude that the issue preserved by the cited assignment of error is whether the Commission erred by failing to make findings of fact about plaintiff's <u>disability</u> to support its determination that plaintiff had a five percent, rather than a seven percent, <u>impairment</u> to his back. Regardless of whether other errors might have been assigned, this Court's review is limited to those errors that are properly preserved:

> The majority opinion then addressed [an] issue, not raised or argued by plaintiff, . . . [and] asserted that plaintiff's Rules violations did not impede comprehension of the issues on appeal or frustrate the appellate process. It is not the role of the appellate courts, however, to create an appeal for an appellant. As this case illustrates, the Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule.

*Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (citing *Viar v. N.C. Dep't of Transp.*, 162 N.C. App. 362, 375, 590

S.E.2d 909, 919 (2004), and *Bradshaw v. Stansberry*, 164 N.C. 356, 79 S.E. 302 (1913)), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005).

Plaintiff argues that the Commission's finding, that plaintiff suffered a permanent impairment to his back, triggered a duty to make findings on the extent of disability or decreased wage earning potential <u>caused by</u> the permanent impairment. Plaintiff contends that, because it failed to make such findings, the Commission erred by awarding benefits for only five percent "disability" to his back. I disagree, and conclude that plaintiff has misstated the law in this regard.

Plaintiff essentially argues that awards under G.S. § 97-31 must be supported by findings on <u>disability</u> caused by the impairment. However, N.C. Gen. Stat. § "97-31 is a schedule of injuries that allows for compensation even if a claimant does not demonstrate loss of wage-earning capacity. 'Losses included in the schedule are conclusively presumed to diminish wage-earning ability.' Thus, the Industrial Commission may enter an award pursuant to section 97-31 without finding that the employee is disabled." *Childress v. Fluor Daniel, Inc.*, 162 N.C. App. 524, 528, 590 S.E.2d 893, 897 (2004) (quoting *Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 575, 336 S.E.2d 47, 52-53 (1985)) (citations omitted). I conclude that the Commission was not required, as a condition of awarding benefits under G.S. § 97-31, to make findings on disability caused by the five percent permanent impairment to his back.

Plaintiff also argues more generally that the Commission erred by failing to make certain findings of fact relevant to his claim for permanent disability. However, as discussed above, plaintiff failed to assign error to the Commission's denial of his claim for permanent disability benefits, or to the Commission's determination that his period of temporary disability ended on 30 November 2000. "Our scope of review is 'confined to a consideration of those assignments of error set out in the record on appeal.' N.C.R. App. P. 10(a). Since plaintiff failed to assign this as error in the record, this issue is not properly before us." *Atlantic Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 346, 623 S.E.2d 334, 340 (2006).

I conclude that the Commission's Order and Award should be affirmed.